**FILED**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JUL 3 0 2010
JUL 30 2010
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

CATHERINE OYEBANJO                )
                                  )      CIVIL ACTION
          Plaintiff,              )
                                  )
               v.                 )      **10cv4810**
                                  )
                                  )      **Judge  Robert W. Gettleman**
OAKTON COMMUNITY COLLEGE;         )
and D. ARNIE OUDENHOVEN- ASSOCIATE )    **Magistrate Maria Valdez**
VICE PRESIDENT FOR HUMAN          )
RESOURCES                         )
(individual in "official and individual capacity") )
                                  )
          Defendants              )
                                  )

**COMPLAINT OF EMPLOYMENT DISCRIMINATION, AGE DISCRIMINATION,**
**GENDER DISCRIMINATION, RACE/COLOR DISCRIMINATION, RETALIATION,**
**FMLA, AND OTHER DISCRIMINATION IN EMPLOYMENT, QUI TAM AND**
**TORTIOUS ACTS, AND REQUEST FOR JURY TRIAL**

Plaintiff, CATHERINE OYEBANJO, PRO SE, complaining of the defendants, avers, and pleads
the following hypothetically and in the alternative:

**JURISDICTION AND VENUE**

1. Plaintiff invokes the jurisdiction of this Court pursuant to                    (including
question of applicable federal law) and           and                 . This is an action
authorized and instituted pursuant to **Title VII** of the Civil Rights Act of 1964, as amended,
                        (hereinafter called "**Title VII**"), and the statutes or laws further
referenced.

2. Plaintiff invokes this Court's jurisdiction under                    and       on the ground that
this action arises under the          and                                    and under
          ,        ,     and        . Plaintiff invokes this Court's jurisdiction under **Title**
**VII** of the Civil Rights Act of 1964,                        Plaintiff invokes this Court's
pendent jurisdiction with respect to her claims based on the common law of Illinois. Plaintiff
otherwise invokes this Court's jurisdiction under the Declaratory Judgment Act,
and        .

3. Plaintiff invokes the jurisdiction of this Court pursuant to                   and
          and        . The matter in controversy arises under an act of Congress regulating
commerce and relating to age discrimination, and it exceeds the sum and value of $10,000.00.

4. Venue is proper in the Court pursuant to                      in that the plaintiff is a resident of this
district, the defendants are situated and doing business through a division, Oakton Community

1

College, in this district, and the activities giving rise to the plaintiff's claim took place in this district, alternatively that the defendant has significant contacts or ties to this district. The unlawful employment practices alleged in this complaint were and are being committed in COOK County, situated in the NORTHERN District of ILLINOIS. **Plaintiff requests a Trial By Jury.**

## PARTIES

5. Plaintiff, Catherine Oyebanjo, is a black, female citizen, who is over 40 years of age, of the United States of America and at all times material to the averments of this complaint, was a resident of Cook County, Illinois, and an employee of the defendant.

6. Plaintiff is informed and believes, and therefore avers, that Defendant, Oakton Community College ("Oakton"), is a corporation or private school, organized and existing under the laws of the State of Illinois, is qualified, situated, or licensed to do business in Illinois and does business in Cook County through and under the name of its division, Oakton Community College. Plaintiff additionally asserts, that Defendant Employer, Oakton Community College, is a private school, generally in the business of providing classes and services towards granting degrees no higher than an Associates Degree, but not a Bachelor's Degree or above, and is considered a private company or school offering classes either towards a degree or towards no degree, which may receive partial public or government funds, and is primarily funded through tuition and other private means.

7. Plaintiff is informed and believes, and therefore avers, that Defendant, D. Arnie Oudenhoven ("Oudenhoven"), is a citizen of the United States and a resident of Cook County, Illinois, and acts in his "official capacity" and individually as *Associate Vice President for Human Resources*, of Oakton Community College. In his official capacity, upon information and belief, he is responsible for some of the academic affairs of Oakton, including and particularly certain personnel matters affecting Oakton's faculty, staff and employees, and is directly or solely involved in practices surrounding the decision making involved with hiring and terminating employees of Oakton, including those surrounding plaintiff's termination and cause of action.

8. Plaintiff is informed and believes, and therefore avers, that the defendants are an "employer" within the meaning of § 701(b) of **Title VII** in that, during all times material to the averments of this complaint, it has engaged in an industry affecting commerce and has employed more than the requisite number of persons for the requisite duration under **Title VII.**

## VIOLATIONS ALLEGED

9. Defendant is alleged to have discriminated against plaintiff because of her sex in violation of § 703(a) of **Title VII** in the following respects: (i) by failing to promote plaintiff on the same terms as males; (ii) by failing to pay plaintiff on the same terms as males; (iii) by failing to train plaintiff for promotion on the same terms as males; (iv) by failing to grant plaintiff seniority and its benefits on the same basis as males; and (v) by failing to take affirmative action to correct the unlawful employment practices alleged herein.

10. This action arises, in part, under the Age Discrimination Act of 1975, (42 USC §6101 et seq.), Age Discrimination in Employment Act of 1967, as amended, (29 USC 621 et. seq.), Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.), Rehabilitation Act of 1973 as amended and its progeny, Older Workers Benefit Protection Act of 1990, The Warn Act, the False Claims Act, the Fraud Enforcement and Recovery Act of 2009 (Pub. L. No.

111-21, 123 Stat. 1617(FERA)), 42 USC 1981, and other federal statues reasonably related to the claims in this case, and the laws of the State of Illinois.

11. Plaintiff is informed and believes, and therefore avers, that the effect of the defendant's practices set forth in this complaint has been and continues to be to limit, classify and discriminate against female persons in ways which jeopardize and tend to deprive said persons of employment opportunities and otherwise adversely affect their status as employees because of their sex in violation of **Title VII;** and plaintiff, a victim of such limitations, classifications and discriminations, is and will continue to be unlawfully deprived of income in the form of wages and of prospective retirement benefits, ability to pay for health insurance, Social Security benefits and other monetary and non-monetary benefits due to her solely because of her sex in sums to be proven at trial.

## CAUSES OF ACTION
EMPLOYMENT DISCRIMINATION
12. Plaintiff incorporates paragraphs 1- 11, inclusive, and is included in each of the following paragraphs in this section, without further reference necessary.

13. Plaintiff alleges that defendants discriminated against the plaintiff because of plaintiff's membership in the following classes or as covered in the following acts:

      a. Age (Age Discrimination in Employment Act.)
      b. Color (Title VII of the Civil Rights Act of 1964 and 42 USC sec. 1981).
      c. National Origin (Title VII of the Civil Rights Act of 1964 and 42 USC sec. 1981).
      d. Race (Title VII of the Civil Rights Act of 1964 and 42 USC sec. 1981).
      e. Sex or Gender (Title VII of the Civil Rights Act of 1964 and 42 USC sec. 1981).
      f. Lily Ledbetter Fair Pay Act.
      g. Age Discrimination Act of 1975, (42 USC §6101 et seq.)
      h. Age Discrimination in Employment Act of 1967, as amended, (29 USC 621 et. seq.).
      i. Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.)
      j. Rehabilitation Act of 1973 as amended and its progeny.
      k. Older Workers Benefit Protection Act of 1990.
      l. The Warn Act
OTHER CLAIMS
14. Plaintiff incorporates by reference paragraphs 1- 13, inclusive, and each referenced paragraph is included in each of the following paragraphs in this section without further reference necessary.
15. Plaintiff alleges the defendants discriminated against plaintiff under the following:

      a. The False Claims Act
      b. The Fraud Enforcement and Recovery Act of 2009 (Pub. L. No. 111-21, 123 (FERA)
      c. Fair Pay Act
      d. Failure to adequately hire, supervise and train senior management personnel.
      e. Failure to adequately investigate
      f. Negligent or Intentional Infliction of emotional distress
      g. Tortuous interference with a business relationship
      h. Loss of status in community
      i. State and other claims reasonably arising from the acts complained of herein or which the defendant knew or reasonably should have known could arise out of the actions complained of herein.

## ADMINISTRATIVE PROCEDURES

16. Plaintiff timely filed a charge of discrimination against the defendant with the Chicago district office of the Equal Employment Opportunity Commission ("EEOC") on or about March 9, 2010, resulting in EEOC Charge Number(s) 440-2010-02828, against defendant(s), which alleged Discrimination based on 1. Race, 2. Color, 3. Sex, 4. Age, and further alleged 5. Retaliation (attached hereto as exhibit). This charge further resulted in an automatic filing of charges with The Illinois Department Of Human Rights ("IDHR"), to preserve Jurisdiction under Illinois Law, IDHR Control No.:100407-025 (attached hereto), and through the EEOC an IDHR charge No. 440-2010-02828 alleging Discrimination based on 1. Race, 2. Color, 3. Sex, 4. Age, and further alleged 5. Discrimination against defendant(s).

17. On or about May 5, 2010, plaintiff received from the EEOC its "Notice of Right to Sue," which entitles plaintiff to institute this action within ninety days of her receipt of said Notice. The EEOC Charge Of Discrimination is attached hereto as an exhibit.

18. Plaintiff timely filed an additional charge of discrimination against the defendant with the Chicago district office of the Equal Employment Opportunity Commission ("EEOC") on or about June 24, 2010, resulting in EEOC Charge Number(s) 440-2010-04874, against defendant(s), which alleged Discrimination based on Retaliation after being discharged in a letter drafted by D. Arnie Oudenhoven (attached hereto). This charge further resulted in an automatic filing of charges with The Illinois Department Of Human Rights, to preserve Jurisdiction under Illinois Law, IDHR Control No.:100407-025 (attached hereto).

19. On or about July 10, 2010, plaintiff received from the EEOC its "Notice of Right to Sue" which entitles plaintiff to institute this action within ninety days of her receipt of said Notice.

20. Plaintiff has satisfied all private, administrative and judicial prerequisites to the institution of this action. Plaintiff is advised that neither the State of Illinois or Cook County nor any city or town located in Cook County has a law prohibiting the unlawful employment practices alleged herein under which plaintiff was obliged to make a complaint or charge, or alternatively in which one was *not* automatically filed with the IDHR to preserve plaintiff's state claims and further exhaust all administrative remedies prior to filing this suit.

## STATEMENT OF FACTS

21. On September 2, 2008, plaintiff was hired by defendant to work as an "assistant coordinator" for Oakton Community College (attached hereto as exhibit).

22. Several months later, Plaintiff was moved into an "office coordinator" position, however plaintiff alleges this was not a promotion, but was rather a position she was constructively "forced" into, and not hired for originally, as the prior office coordinator had long since resigned (attached hereto as exhibit).

23. Plaintiff's field of expertise is within the scope of her previous (pre-termination) position as the Office Coordinator. Defendant has a department or location on the site of Evanston High School, in Cook County, Illinois, which students attend, and is considered to be a campus within the school of Oakton. Plaintiff was transferred from her original location and worked mostly on the Evanston High School Campus. Upon information and belief, D. Arnie Oudenhoven heads the

school of Oakton. Plaintiff alleges that African-American people constitute a small minority of faculty members or employees within Oakton. Upon information and belief, at no time material to the allegations of this complaint did any known black people serve within the Human Resources Department of defendant, which was composed of one white of American origin, Oudenhoven, and other whites, of American and other origins.

24. Plaintiff graduated from a reputable college, with a bachelor's degree. At the time of hire from Oakton, plaintiff had job offers or interviews from several recognized Employers, had a proven track record, solid experience, and strong references from her prior employers. Her decision to accept the offer of her position within Oakton, was made in specific reliance upon the representations made to her about long-term commitment, her prior and personal experiences in dealing with the school, which her son attended, and upon Oakton's public reputation.

25. Plaintiff alleges that the actions of these 2 defendants culminating in the denial of numerous promotion opportunities given to others with less experience and qualifications, the unexpected and demanded movement of plaintiff from one campus, to a less safe campus situated on Evanston High School, and proposed physical death threats against her person made by Tynon Authors, and other actions including her ultimate termination, were unlawfully motivated by impermissible consideration of plaintiff's race and national origin and her exercise of free speech rights and by personal malice.

26. On or about June 3, 2010, plaintiff was terminated from her position by D Arnie Oudenhoven, Associate Voice President for Human Resources in a letter delivered via E-mail and US Mail (attached hereto).

27. Plaintiff alleges that Mr. Audenhoven's letter is evidence of a wrongful termination, wrongful discharge, or a retaliatory discharge, and that said letter also made references to reasoning which was inaccurate or untrue as to why the college was claiming to fire plaintiff, including citing to alleged "job abandonment" and non-compliance with FMLA sick leave or guidelines, due to no fault of the plaintiff.

"... A decision not to reappoint (or to terminate) may not be based upon (1) the faculty member's exercise of rights guaranteed by the                                        2) discrimination based upon the faculty member's race, sex, religion or national origin; or (3) personal malice."

28. Plaintiff alleges that the actions of these 2 defendants culminating in the denial of numerous promotion opportunities given to others with less experience and qualifications, the unexpected and demanded movement of plaintiff from one campus, to a less safe campus situated on Evanston High School, and proposed threats and other actions including her ultimate termination, were unlawfully motivated by impermissible consideration of plaintiff's race and national origin and her exercise of free speech rights and by personal malice.

29. With respect to race and national origin discrimination, plaintiff alleges, in addition to the absence of any black faculty members on the School Committees which preside over those in her position, there is a disproportionately small number of black faculty members and employees at Oakton, and a disproportionately large number of foreign-born and non-black faculty members. Plaintiff alleges that black employees and staff are treated less favorably with respect to salaries than non-black foreign-born employees, and black employees are treated less favorably than non-black foreign-born employees with respect to promotion, committee assignments, promotional opportunities and the like. At the same time when Oakton refused to continue to allow plaintiff

her FMLA leave or otherwise accommodate employment, they had allegedly approved the hiring of a number of foreign-born non-black faculty members and/or employees within the school.

30. With respect to personal malice against the plaintiff, plaintiff alleges that Oakton and Oudenhoven, respectively, had previously provided greater attention and support to other employees who were applying for similar positions or promotions and had, in fact, intervened in favor of other employees in support of their applications. Plaintiff further alleges that defendants unduly interfered in the deliberations of the School's decisions as to increases in pay requested by Plaintiff as well as promotions and other inquiries made by Plaintiff. Plaintiff further alleges that defendants were all aware of plaintiff's popularity with students and black colleagues, of which her job duties caused her to regularly accommodate and properly deal with both, and that these defendants are not able to make an informed and dispassionate judgment of plaintiff's qualifications.

31. With respect to plaintiff's exercise of free speech rights, plaintiff has since becoming employed at Oakton, spoken out on a number of matters of institutional concern without being disruptive. For example, plaintiff has complained publicly within the community about (i) salary differentials affecting black employees and faculty members, (ii) the need for more black faculty members and black faculty visibility, and (iii) the practice of letting students or others who are non-qualified or preferentially hired, teach courses for which they are not adequately trained. On all of these matters plaintiff's views became known to the administration and, in most cases, ultimately to Oakton and Oudenhoven. On at least one occasion, Oudenhoven called plaintiff into his office and complained about disruptive behavior, although plaintiff had at no time interfered with the educational process at Oakton, nor with her other of her employment related duties as it pertained to any relevant processes.

32. Plaintiff was not advised of any alleged shortcomings with respect to her record as an employee at Oakton, until about January 3, 2010, when plaintiff's life was threatened by a fellow employee ("Authors") (as attached hereto). This was immediately brought to plaintiff's supervisors and eventually, to Audenhoven, and lead to her decision to take an FMLA leave, as prescribed by her Doctor, due to a staggering increase in her blood pressure.

INCORPORATION OF ALLEGATIONS

33. All of the allegations in each of the foregoing paragraphs are incorporated by reference into each of the following claims for relief as if fully set forth in each such claim.

**I. FIRST COUNT**
Age-Based Discrimination

34. All of the allegations in each of the foregoing paragraphs are incorporated by reference into each of the following claims for relief as if fully set forth in each such claim.

35. Plaintiff performed her duties successfully as an employee of the defendant from September 2, 2008, through June 3, 2010, the date of her discharge, without legitimate complaint from any agent or employee of defendant concerning the quality of her job related performance.

36. On or about June 3, 2010, plaintiff's employment with defendant, was terminated by defendant.

37. Plaintiff was born on November 3, 1962, and was 47 years old, or over the age of 40 and a

member of a constitutionally protected class based upon her age as in the Age Discrimination in Employment act, at the time of her termination.

38. Plaintiff is informed and believes and therefore alleges that defendant replaced plaintiff in the position, which she formerly held with defendant, with a younger woman who had little experience in the job.

39. The termination of plaintiff by defendant was because of plaintiff's age, which termination constitutes a violation of                    and therefore entitles plaintiff to relief under the provisions of               .

40. Plaintiff has filed a charge of discrimination with the Equal Employment Opportunity Commission and exhausted administrative remedies, as cited above.

41. The termination of plaintiff's employment by the defendant constitutes a willful violation of                and as such, entitles the plaintiff to recover double damages.

42. At the time of her discharge, the plaintiff earned a salary of approximately $38,000 per year, however calculations are based roughly upon hourly wages, overtime and the like, and received some benefits from the defendant, including her interest, property interests, or expectancy in the saving and investment plans then available and retirement benefits, pensions, 401K, IRA and other interests.

## II. SECOND COUNT
Family And Medical Leave Act ("FMLA")/ Hostile Workplace and Failure to Create a Safe Workplace

43. All of the allegations in each of the foregoing paragraphs are incorporated by reference into each of the following claims for relief as if fully set forth in each such claim.

44. That in January of 2010, the plaintiff was an employee of the defendant, Oakton and Oudenhoven, at their Evanston, Illinois campus, located on the same campus as Evanston Township High School, situated in Cook County.

45. That plaintiff had been an employee of the defendant school or corporation since September of 2008.

46. That in January of 2010, plaintiff suffered from a serious health condition as defined by the Family and Medical Leave Act,                    .

47. That this serious health condition was caused by a serious elevation in plaintiff's blood pressure, as diagnosed by a Medical Doctor, and that additional anxiety, loss of sleep and appetite and other physical symptoms and overall health concerns, were diagnosed by plaintiff's primary care physician. These conditions were made in direct conjunction with plaintiff's allegedly abusive, hostile, and unsafe workplace and in direct reaction to a threat made against her life made by a co-worker, in front of a supervisor. The supervisor and co-workers present took no action to prevent or aid the plaintiff. Subsequently the co-worker was not terminated for this incident, which occurred in front of several witnesses, and then several weeks later was allegedly let go for stealing from employer, and blaming the theft on plaintiff in some capacity. All of these conditions and diagnoses were made by an M.D. and submitted, in writing, to Employer through an FMLA leave request, which satisfies the definition of serious health condition under the

Family and Medical Leave Act,

48. That this serious health condition interfered with the plaintiff's ability to perform her duties, and made it impossible for her to perform the functions of her position of employment at the defendant corporation.

49. That additionally, the cause of the condition, which was a male co-worker, Tynon Authors ("Authors") with a documented and known "checkered past," making a serious death threat against plaintiff (attached hereto as exhibit), was not removed. That other security issues including the manner in which supervisors handled this threat and others, were not improved, on the campus on which the plaintiff was located, and that at such campus violence was documented, guns and other weapons were regularly found or confiscated, shootings took place, and a faculty member's daughter named Julie Berman ("Berman"), who was a white female under 40, allegedly given preferential treatment in hiring as her direct family member a faculty member, despite an alleged criminal past and history of violence threatened plaintiff with hitting a co-worker, and despite plaintiff's best efforts to notify supervisors, Berman made good on her threat by hitting another co-worker within Oakton's offices (attached hereto as exhibit). As these incidences were allegedly and increasingly the "norm" at the Oakton Campuses, plaintiff genuinely feared for her safety and hoped her many grievances with HR and supervisors would be taken seriously and addressed, plaintiff feared to return to her workplace, under her doctor's supervision, until such dangers were removed. Plaintiff was forced to work alone at nights, and, cumulatively, this was the proximate cause of plaintiff's medical conditions.

50. That on or about January 3, 2010, plaintiff orally requested leave, to seek immediate medical treatment for the above-mentioned serious medical condition.

51. That due to the nature of the condition, 30 days notice for the requested leave was not practicable.

52. That prior to requesting the leave, plaintiff had no knowledge of her rights under the Family and Medical leave Act, and has no recollection of any such information having been posted at her place of employment or provided to her in any employee handbook or other publication.

53. That, on information and belief, the defendants had failed in its obligation under
         to provide posted notices and other materials to its employees regarding their rights under the Family and Medical Leave Act.

54. That plaintiff's request for leave was properly executed through the advice of her primary care physician, sent numerous times in writing, mishandled by Oakton who seemed unfamiliar with how to handle FMLA requests generally, that Oakton and Oudenhoven eventually sent Plaintiff on frolic errands to numerous clinics, only for plaintiff to be told that such doctors or clinics do not handle or have never handles or refused to handle FMLA, and that eventually, defendants claimed that plaintiff's FMLA claim, was denied (attached hereto as exhibit).

55. That as a result of her absence from work for the purpose of seeking treatment for a serious medical condition, plaintiff was terminated from her employment with the defendant, in a letter executed by Oudenhoven, effective June 3, 2010 (exhibit attached).

56. That as a result of her termination by the defendant, plaintiff suffered significant financial loss, emotional distress, and loss of the benefits of her employment, including, but not limited to, the ability to afford health insurance for herself, and her family.

o

FMLA RELIEF

57. All of the allegations in each of the foregoing paragraphs are incorporated by reference into each of the following claims for relief as if fully set forth in each such claim.

58. That the allegations of Paragraphs 1-56 are hereby incorporated by reference as if fully set out.

59. That these acts are a willful violation of the Family and Medical Leave Act of 1993, and entitle the plaintiff to recover damages as provided at                                    .

## III. THIRD COUNT

60. All of the allegations in each of the foregoing paragraphs are incorporated by reference into each of the following claims for relief as if fully set forth in each such claim.

61. At various times during plaintiff's employment she was subjected to verbal and physical sexual harassment by co-workers, other staff including those of Evanston High School, and even supervisors and managerial officials of the defendant, and those of it's "partner" or agents at Evanston High School. Plaintiff was led to believe by the defendant that her employment opportunities at the Company and those of other female employees would be enhanced, or in the alternative that her employment would be taken away, by acceding to the sexual advances and suggestions of certain of the defendant's male officials. Plaintiff was also obliged to work in an atmosphere which was hostile to females by virtue of unsolicited and unwelcome sexual advances, requests for sexual favors and other verbal and physical conduct of a sexual nature. This sexual harassment was sufficiently pervasive to alter the conditions of plaintiff's employment and create a working environment, which was intimidating, insulting and abusive to female employees. As a result of this sexual harassment, in part, plaintiff was obliged to seek refuge behind the Family Medical and Leave Act (FMLA) as advised through her Doctor, and take time off from her employment beginning in January of 2010. Subsequently, plaintiff was thereby constructively discharged.

62. Defendant discriminated against plaintiff because of her sex in violation of section 703(a) of **Title VII** by constructively discharging and otherwise discriminating against her, by engaging in, tolerating or failing to prevent the sexual harassment alleged above and by failing to take affirmative action to correct and redress these unlawful employment practices. Defendant also discriminated against plaintiff in violation of section 704 of **Title VII** by constructively discharging and otherwise discriminating against her because of her opposition to the unsolicited and unwelcome sexual advances, sexual and lewd remarks and conduct of co-workers and her superiors, forced upon her (and other females) and the other sexual harassment in her workplace.

63. Plaintiff believes, and thus avers, that the effect of the defendant's unlawful employment practices has been to limit, classify and discriminate against females in ways which jeopardize and tend to deprive them of employment opportunities and otherwise adversely affect their status as employees because of their sex in violation of **Title VII;** and plaintiff, a victim of such practices, is now and will continue to be unlawfully deprived of income in the form of wages and of prospective retirement benefits, seniority, Social Security benefits, insurance coverage and other monetary and non-monetary benefits due to her solely because of her sex in sums to be proved at trial.

64. Plaintiff has no plain, adequate or complete remedy at law to correct the defendant's unlawful employment practices, and the injunctive and other equitable relief she seeks is her only means of securing full relief from these practices. Plaintiff is now suffering and will continue to suffer irreparable injury from these unlawful employment practices.

65. Defendant has acted maliciously or with reckless indifference to plaintiff's rights under federal law.

66. Plaintiff is entitled to recover from the defendant reasonable attorneys' fees as provided in section 706(k) of **Title VII.**

## IV. FOURTH COUNT

66. All of the allegations in each of the foregoing paragraphs are incorporated by reference into each of the following claims for relief as if fully set forth in each such claim.

67. During plaintiff's employment by the defendant, one of its officers, acting without plaintiff's consent and contrary to her stated wishes, spoke and made reference to her in a sexual manner on more than one occasion. Another officer of the defendant sexually importuned plaintiff verbally and otherwise in a vulgar and unwelcome manner. This conduct and other incidents of harassment because of plaintiff's sex, exceed the bounds of decency tolerated in Illinois. The harassment directed at the plaintiff, which ultimately lead to or contributed significantly towards the alleged wrongful termination of her employment, was either intended to cause her severe emotional distress or was perpetrated with a reckless indifference to the likelihood that it would cause such distress. By the winter of 2009 this harassment directed at plaintiff had, in fact, caused her such severe emotional distress that she was obliged to request an FMLA leave of absence from her employment, under orders from her doctor pertaining solely to her poor and intolerable work environment, in order to protect her well-being. Defendant is, therefore, liable to the plaintiff for all damages proximately resulting from the distress she has suffered relating to the conduct of its officers.

68. In addition to the relief afforded by **Title VII,** plaintiff seeks, as a result of the intentional infliction of mental distress upon her, compensatory damages incurred or to be incurred by her and punitive damages in an aggregate amount in excess of $10,000 in accord with the Illinois Rules of Civil Procedure.

## FIRST CLAIM FOR RELIEF

69. The defendants, at times alleging to have acted under color of Illinois Law, subjected plaintiff to the deprivations of the following rights, privileges and immunities secured by the Constitution and laws of the United States when they decided to terminate plaintiff from Oakton Community College following the 2009-2010 academic year ,and not to permit plaintiff to have access to a meaningful institutional remedy for violation of her rights:

(a) The defendants have deprived plaintiff of her right of free speech under the         and
                                              by basing their decisions to an impermissible extent on plaintiff's exercise of her free speech right.

(b) The defendants deprived plaintiff of her right to equal protection of the laws as guaranteed by

the                                              by intentionally basing their decisions to an impermissible extent on plaintiff's race, color and national origin.

(c) The defendants deprived plaintiff of her right to due process of law under the
                                    by refusing to acknowledge a decision on granting FMLA to her properly, or honoring a request to move her to one of their numerous other sites and campuses, which would permit plaintiff to pursue her remedies under the Faculty Handbook, or other governing Employment handbook, delaying a decision on plaintiff's claims until her purported terminal FMLA time ran out, failing to abide by its own substantive requirements for granting FMLA leave under the circumstances or any other remedy at law, and failing to abide by its own procedural requirements for a grievance appeal within the institution from an adverse decision on employment.

(d) The defendants have denied plaintiff her privileges and immunities secured by the
                                    and due process and equal protection of the laws under that amendment by impermissibly basing their decision upon plaintiff's exercise of rights guaranteed by the                                    , upon plaintiff's race, color and national origin and upon personal malice toward plaintiff.

70. As a result of the foregoing deprivations, plaintiff has effectively been discharged unlawfully from her employment, has failed to obtain employment rights which she would otherwise be entitled, has suffered anxiety and other distress, including but not limited to documented and diagnosed increased blood pressure due to events solely at her workplace, which have gone ignored by defendants, and in further, since being advised on June 3, 2010, that she would not be granted proper and requested FMLA leave or continued employment, has since suffered humiliation and embarrassment as a result of being effectively discharged from employment at her former employer, and her son's own alma mater, has suffered and will continue to suffer lost wages and fringe benefits as an employee of Oakton, and has suffered other compensatory damages to be proved at trial.

SECOND CLAIM FOR RELIEF

71. Plaintiff alleges that Oakton and Oudenhoven have conspired for the purpose of depriving plaintiff of the equal protection of the laws and of equal privileges and immunities under the laws by refusing to allow plaintiff continued employment at Oakton, by refusing to provide any promotional opportunities or pay increases to the plaintiff, and by refusing to grant to plaintiff access to a meaningful institutional remedy for the violation of her rights as found by Oakton and Oudenhoven in his personal and official capacity. Defendants' conduct in this regard was motivated impermissibly by plaintiff's race and national origin, by personal malice against the plaintiff and by improper consideration of plaintiff's exercise of free speech under the          and

72. In furtherance of the object of this alleged "conspiracy" to deprive plaintiff of the equal protection of the laws and her equal privileges and immunities under the laws, the defendants have done or caused to be done the acts set forth in this complaint, which resulted in plaintiff's wrongful termination or retaliatory firing, denial of continued employment and any property interests plaintiff held in her paycheck and continued employment with defendants, and denial of any remedial rights, which otherwise are allowed to other employees of Defendant.

73. Plaintiff has been injured in her person and property and deprived of exercising her rights and

privileges as a citizen by virtue of the conduct of the conspiring defendants. Plaintiff's allegations as to damages in paragraph 32 are incorporated herein by reference.

THIRD CLAIM FOR RELIEF

74. Oakton and Oudenhoven had knowledge at all material times that the wrongs conspired to be done as alleged in the second claim for relief were about to be or were in the process of being committed during the period from 2008 through the date of this complaint. The defendants have or had the power to prevent or aid in preventing the commission of these wrongs; yet, they have neglected and refused to do so. Defendants could have, by reasonable diligence, prevented the wrongs alleged in the second claim for relief by reappointing plaintiff to her position, by recommending the conferral of plaintiff's prior position, or by granting plaintiff some other effective remedy to redress the deprivation of his rights. However, prior to this filing, Defendants have delayed and mislead plaintiff as towards any settlement or other means of solving these issues, and neglected to offer any form of severance or other equitable remedy whatsoever, despite plaintiff's efforts and expenses.

75. Plaintiff has been damaged in the manner set forth in paragraph 32 of this complaint which is incorporated herein by reference and is entitled, by virtue of                    , to recover from Oakton and Oudenhoven (and any other defendant whom plaintiff learns has neglected or refused to prevent the wrongful acts alleged) all damages resulting from such wrongful neglect or refusal.

FOURTH CLAIM FOR RELIEF

76. The defendants have deprived plaintiff of her right to make and enforce contracts and to the full and equal benefit of Oakton's regulations and all laws and proceedings for the security of plaintiff's employment because of plaintiff's race and national origin in violation of

77. Plaintiff has been damaged by virtue of defendants' conduct alleged in the foregoing paragraph in the same manner as alleged in paragraph 32 above, which is incorporated herein by reference, and is entitled to recover these damages from the appropriate defendants.

FIFTH CLAIM FOR RELIEF
Civil Rights Act of 1964

78. Oakton and Oudenhoven have discriminated against plaintiff because of her race, color and national origin with respect to the terms and conditions of her employment by refusing to grant plaintiff's FMLA leave, allowing her any hopes of continued employment and/or pay, or by now not allowing plaintiff to enter Oakton's facilities, and by refusing to grant plaintiff a meaningful remedy for violations of his rights and have thereby intentionally engaged in unlawful employment practices prohibited by                    .

79. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity as referenced above, and as required by                    . More than 180 days have elapsed since the filing of that charge, and neither the EEOC nor the Attorney General of the United States has filed a civil action with respect to the charge, and the EEOC has not entered into a conciliation agreement to which plaintiff is a party.

80. The allegations of paragraph 32 are incorporated herein by reference. Plaintiff is entitled to such affirmative action and other equitable relief (including reinstatement with back pay) as this Court deems appropriate under                    .

SIXTH CLAIM FOR RELIEF
Illinois Equal Employment Opportunity Act

81. The conduct of defendants as alleged in the foregoing claims for relief constitute discrimination because of plaintiff's race, color, national origin in violation of Illinois law. By virtue of this conduct the plaintiff has been damaged by these defendants in the manner set forth in paragraph 32 above which is incorporated herein by reference.

82. By virtue of Illinois law, there is implied a cause of action in favor of plaintiff with respect to this conduct in violation of the public policy of Illinois, and plaintiff is thus entitled to recover the aforesaid damages from defendants as a result of this violation.

SEVENTH CLAIM FOR RELIEF
Breach of Contract

83. The defendants' refusal to reappoint plaintiff to her prior position, to offer pay increases or promotions to the plaintiff and to provide plaintiff an institutional remedy for the violation of his rights constitutes a breach of plaintiff's contract of employment, as well as plaintiff's reasonable expectations in continued employment and promotion opportunities when plaintiff took her position with Oakton in 2008.

84. As a result of this breach of contract, the defendants have damaged plaintiff in the manner set forth in paragraph 32 above which is incorporated herein by reference. Plaintiff is therefore entitled to recover these damages from the defendants under the common law of Illinois.

85. In connection with the breach of plaintiff's contract of employment, plaintiff further alleges that the defendants failed to act in a commercially reasonable manner, failed to perform their contractual obligations in good faith and failed to carry out their contractual obligations in accordance with the public policy of Illinois.

EIGHTH CLAIM FOR RELIEF
Promissory Estoppel

86. Plaintiff reasonably relied to her detriment upon the promises and representations made to her prior to her employment at Oakton, concerning the terms and conditions of her employment and upon the promises made in her existing or implied contract of employment (plaintiff believes no written employment contract was provided to her). Plaintiff reasonably believed at all times prior to January, 2010, that she would have an ongoing and vested employment interest, pursuant to her meeting her end of the bargain, to Oakton's employees for the 2010-2011 academic year. Plaintiff reasonably believed or was lead to believe that she would continue to be considered for continued employment and promotional opportunities as well as increases in pay and the like based upon realistic and un-biased feedback on her performance, and that she had fulfilled all the requirements for obtaining continued employment and opportunities towards raises and promotions prior to the end of the 2009-2010 academic year, or June 3, 2010 and thereon.

87. By virtue of the decision to terminate plaintiff from Oakton's employees and/or faculty,

following the 2009-2010 academic year and the decision not to promote plaintiff, grant plaintiff's properly plead FMLA requests, and then terminate plaintiff, without providing her any warnings or opportunities or reasonable accommodations, the defendants breached the foregoing representations, promises and inducements which they are estopped to deny because of plaintiff's reliance upon them. This reliance was to plaintiff's detriment in that she could have obtained other employment at other universities or schools, based upon factors such as her education, solid work background, training and relevant experience.

88. The defendants have damaged plaintiff in the manner set forth in paragraph 32 above which is incorporated herein by reference, and plaintiff is entitled to recover such damages as a result of the foregoing breaches of promise.

MISCELLANEOUS ALLEGATIONS

89. The defendants have at all times material to the foregoing claims acted willfully and with malice toward the plaintiff. The defendants knew, or reasonably should have known, that their conduct was unlawful and specifically in violation of their own faculty or employee Handbook, and the laws of Illinois and the United States. At least by June 3, 2010, the defendants knew, or reasonably should have known, of the specific grounds for plaintiff's complaint about not being granted FMLA leave or absence, nor transferring plaintiff to a safer campus, and being many or most, if not all opportunities towards advancement in her division; yet, the defendants took no action to cease their wrongful conduct. Plaintiff had well advised defendants of her concerns, many months prior to her wrongful termination, which mostly all went ignored, and in fact, the defendants committed further acts designed to cover up the patent discrimination against the plaintiff because of her race, color and national origin, because of her exercise of free speech and because of personal malice toward the plaintiff. Accordingly, the plaintiff is entitled to exemplary and punitive damages to be paid by the defendants in such an amount as the jury may award by in no event less than $250,000.

90. Plaintiff does not have a complete and adequate remedy at law and is thus entitled to injunctive and other equitable relief to remedy the violations of her rights.

91. Plaintiff has no plain, adequate or complete remedy at law to correct the unlawful employment practices set forth herein, and this suit for injunctive and other equitable relief is her only means of securing adequate relief. Plaintiff is now suffering and will continue to suffer irreparable injury from the defendant's policies, practices, customs and usages as set forth in this complaint.

92. Plaintiff is entitled to recover against the defendant reasonable attorneys fees for the services of any attorney who may represent her in the proceedings as provided for in § 706(k) of **Title VII.**

93. Defendant has acted maliciously or with reckless indifference to plaintiff's rights under **Title VII.**

RESERVATION OF RIGHTS

94. This is the general substance of facts related to the claims outlined above, but is not a full accounting of all incidents that were discriminatory, retaliatory or otherwise violate plaintiff's rights as guaranteed under federal, state or local laws and the public policy espoused by the Courts. Plaintiff reserves the right to amend the facts and to add

additional facts as necessary, or to add additional legal claims as necessary.

95. Any claim arising out of the transactions and occurrences, acts or failure to act, and omissions of one or all of the defendants is incorporated herein as if fully plead and any claim added later relates back to the date of original filing.

WHEREFORE, Plaintiff prays this case be tried by a Jury and that this Court, pursuant to § 706(f) of **Title VII**, advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be in every way expedited and, after such hearing, to enter an order providing as follows:

(a) That a declaratory judgment be issued that plaintiff's rights have been violated as alleged above;

(b) declare that the employment practices complained of herein are unlawful in that they violate **Title VII;**

(c) permanently enjoin the defendant(s), its agents, successors, employees, attorneys and those acting in concert with it from engaging in said unlawful employment practices and from engaging in or continuing any and all other practices found by this Court to be in violation of either of the aforesaid statutes;

(d) the plaintiff recover from the defendant double damages for willful violation by the defendant of                      in an amount to be determined by a jury, and all issues herein be determined by a jury of her peers

(e) that she be awarded liquidated damages in an amount equal to all lost wages, salary, employment benefits, and other compensation lost as a result of defendant's wrongful conduct in the amount proven at trial.

(f) that, absent sufficient damages awarded, plaintiff be reinstated as an employee of the defendant in a similar position with similar pay and benefits to that from which he was wrongfully terminated.

(a) order the defendant(s) to make whole the plaintiff by providing appropriate back pay and reimbursement for loss of pension, retirement, Social Security and other benefits, plus prejudgment interest, and other monies or compensation which this honorable court may deem owed, all in amounts to be provided at trial;

(b) order the defendant(s) to pay such compensatory and punitive damages as the jury may award;

(c) retain jurisdiction over this action to insure full compliance with the orders to this Court and with the statutes, regulations and guidelines upon which this action is based, and require the defendant(s) to file such reports as the Court deems necessary and proper to evaluate such compliance

(d) That plaintiff have and recover from the defendants, jointly and severally, amounts including, but not limited to: back wages, compensatory damages, statutory liquidated, exemplary and punitive damages and such other monetary relief as may be deemed appropriate in amounts to be determined at trial, but in no event less than $250,000.

(e) That said amount shall also go to an award of compensatory damages for emotional distress, mental anguish and humiliation, or the maximum otherwise allowed by law, and award liquidated and/or double damages in an amount calculated on the back-pay owed;

(f) That plaintiff recover from the defendants, jointly and severally, the amounts of all wages, and other compensation to which she is entitled to from June 3, 2010 to the time of entry of judgment herein, prejudgment interest to the maximum extent permitted by law;

(g) That plaintiff recover from the defendants, jointly and severally, her costs, including

expert witness fees and reasonable attorneys' fees (for those already incurred in pursuing this legal action and for those anticipated in pursuit of this action), together with such other remedies as may be provided by law;

(h) And that this honorable Court may grant any and all such other and further relief as it deems just, fit and proper.

DATED: This 30th day of July, 2010.

Respectfully submitted,

Catherine Oyebanjo
Plaintiff *pro se*
2020 West Farwell, Unit 408
Chicago, IL 60645
Telephone: 773-262-3832

**Pursuant to Fed. R. Civ. Proc. 38, plaintiff demands a Trial by Jury of all issues of fact in this action.**

**July 30, 2010**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CATHERINE OYEBANJO | ) | |
| | ) | CIVIL ACTION |
| Plaintiff, | ) | |
| | ) | NO._____ |
| v. | ) | |
| | ) | |
| | ) | |
| OAKTON COMMUNITY COLLEGE; | ) | |
| and D. ARNIE OUDENHOVEN- ASSOCIATE | ) | |
| VICE PRESIDENT FOR HUMAN | ) | |
| RESOURCES | ) | |
| (individual in "official and individual capacity") | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

# **\*\*PLEASE BEGIN ALL EXHIBITS HERE\*\***



# Oakton
## Community College

| Office of | 1600 East Golf Road |
|---|---|
| Human Resources | Des Plaines, Illinois 60016 |
| | 847.635.1675 |
| | Fax 847.635.1764 |

March 16, 2009

Catherine Oyebanjo
P. O. Box 227
Evanston, IL 60204

Dear Ms. Oyebanjo,

On behalf of Oakton Community College (OCC), congratulations! We are pleased that you have chosen to continue with us. Your first few days in your new position will be a transition period and I hope the following personalized information will be helpful to you.

Your new title is Office Coordinator - ALL and you are considered a part-time member of the OCC staff. You will continue to work in the Evanston Township High School ALL office under the supervision of Anna Shipulina.

Your position is a grade 9 in Oakton Community College's Staff salary program and you will remain at step 1. Your salary will be $17.41/hour – earned and paid biweekly. Your performance will be reviewed on a scheduled basis with the first evaluation being upon the completion of a 20 working day probationary period. Your probationary period is scheduled to end on April 23, 2009.

Your first day of employment in the new position is Monday, March 23, 2009.

Again, congratulations on your new position. We are glad to have you with us. If you have any questions or concerns, please do not hesitate to call me.

Best regards,

Telicia Keith
Employment Specialist

FILE

PL, Exhibits "L"          Employment Papers/
FMLA

## OAKTON COMMUNITY COLLEGE'S EQUAL EMPLOYMENT OPPORTUNITY VOLUNTARY SELF-IDENTIFICATION EMPLOYEE SURVEY

Employee Name: _Catherine Oyebanjo_   Position: _Assn. Coordinator_
Date: _9/8/08_

Oakton Community College is an equal opportunity employer and does not discriminate on the basis of race, color, religion, sex, national origin, age, disability, or any other basis prohibited by federal, state, or local law. No question on this form is intended to secure information to be used for such discrimination.

Are you Hispanic or Latino (or are you of Spanish origin)?   □ Yes, Hispanic or Latino   ☑ Not Hispanic or Latino

Are you from one or more of the following racial groups (Please select all that apply.)?

□ American Indian or Alaska Native         □ Asian                       ☑ Black or African American
□ Native Hawaiian or other Pacific Islander  □ White or Caucasian          □ Other

Please identify your primary racial or ethnic group (Select one.)

□ American Indian or Alaska Native         □ Asian                       ☑ Black or African American
□ Hispanic or Latino                       □ White or Caucasian
□ Native Hawaiian or other Pacific Islander  □ Choose Not to Respond

Are you in the United States on a Visa – Nonresident Alien?

□ Yes, in the United States on a Visa    Home country of Origin _____    ☑ Not in the United States on a Visa

**To Vietnam Era Veterans, Other Eligible Veterans, Special Disabled Veterans and Individuals with Disabilities**
Government Contactors and subcontractors subject to the Vietnam Era Veterans Readjustment Act of 1974 and the Rehabilitation Act of 1973 are required to take affirmative action to employ and advance in employment Vietnam era and other eligible veterans, qualified special disabled veterans, and qualified disabled individuals. Submission of this information is voluntary; refusal to provide it will not subject you to any adverse treatment. The information provided will be held in the strictest confidence, will be maintained separate from your personnel file, and will not be used in a manner inconsistent with the Acts.

□ Yes  ☑ No   **Veteran of the Vietnam Era.** A "Veteran of the Vietnam Era" is a person who served on active duty for more than 180 days, any part of which occurred between August 5, 1964 and May 7, 1975, and was discharged with other than a dishonorable discharge. Veterans meeting the above criteria who served in the Republic of Vietnam between February 28, 1961 and May 7, 1975 are also protected.

□ Yes  ☑ No   **Recently Separated Veteran.** A "Recently Separated Veteran" is defined as a veteran who has been discharged or released from active duty within the past one year period.

□ Yes  ☑ No   **Other Eligible Veteran.** An "Other Eligible Veteran" is defined as a veteran who served on active duty during a war or in a campaign or expedition for which a campaign has been authorized.

□ Yes  ☑ No   **Special Disabled Veteran.** A "Special Disabled Veteran" is a person entitled to compensation under laws administered by the Department of Veterans Affairs for a disability rated at 30% or more, or rated at 10% or 20% in the case of a veteran who has been determined by the Department of Veteran Affairs to have a serious employment handicap, or a person whose discharge or release from active duty was for a service-connected disability.

□ Yes  ☑ No   **Disabled Individual.** A "Disabled Individual" is defined as an individual who has a mental or physical impairment which substantially limits one or more major life activities, has a record of such impairment, or who is perceived as having such impairment.

If you are an individual with a disability or a special disabled veteran, we would like to include you under the affirmative action program. It would assist us if you inform us of (1) any special methods, skills and procedures which qualify you for the positions that you might not otherwise be able to perform because of your disability so that you will be considered for any such positions, and (2) the accommodations necessary to assist you in performing the job properly and safely, including special equipment, changes in the physical layout of the job, elimination of certain duties relating to the job, provision of personal assistance services, or other accommodations.



Office of
Human Resources

1600 East Golf Road
Des Plaines, Illinois 60016
847.635.1675
Fax 847.635.1764

I, *Catherine Oyebanjo* _____, certify that on
*09/08/2008* _____ (date), I received a copy of the Social Security
Administration's handouts entitled "Windfall Elimination Provision" and
"Government Pension Offset" that set forth an explanation of the effect of
government employment on social security benefits.


_____
Signature

**Oakton**

## Personnel Action Notice

---

**CURRENT PERSONAL DATA**

Name:      Catherine Oyebanjo                Effective Date:  03/22/2009
Hire Date: 09/02/2008                        Ssn:     355566279
Address:   PO Box 227                        Phone:   (773) 807-1055
           Evanston, IL    60204             Occ ID:  B02020363

---

**POSITION DATA**

Category:  Classified Part Time Staff        Position Number: C99606-00
Position:  Office Coordinator ALL            Union: APT LCL 1600
Supervisor:                                  Grade:   09    Step:       1
Reason for Change:  Promotion                Shift:   S     Exempt:     N
Location:   OFF    SAL                       Hrs Per Week:  **25**
Home Org:   ALLiance                         Payment: Hourly
Time Sheet: ALL Dir Com & Adlt Ed

---

**SALARY DATA**

**Old Salary**          **New Salary**          **Salary Change**

---

**LEAVE DATA**    Date From:              Type:
                  Date To:

---

**TERMINATION DATA**
        Termination Date:              Reason:

---

COMMENTS:  Employee applied for and was hired for the Office Coordinator position
           at Evanston Township HS.

---

D. Davis all ____ 03/19/09.                  Donna Kelly
Human Resources/Date                         Administrator/Date

CC:  Payroll                  Administrator
     Business & Finance       Catherine Oyebanjo
     Human Resources          APT LCL 1600

H2RPANS

# OAKTON COMMUNITY COLLEGE
# INTERNAL STAFF JOB APPLICATION

**Date:** 2/12/2009

**Name:** CATHERINE CYEBANJC.

**Home Phone Number:** 773 262-3632

**Office Extension:** 6230

**Position You Are Applying For:**
(As it appears on job posting)

OFFICE COORDINATOR

## EDUCATION:

| NAME AND LOCATION | MAJOR | MINOR | DEGREE |
|---|---|---|---|
| HIGH SCHOOL Cal Park H.S | General | – | Complete |
| COLLEGE/UNIVERSITY Northeastern Ill University | Bus. | – | Incomplete |
| GRADUATE SCHOOL No | — | — | |

**OTHER:**
**BUSINESS COLLEGE OR OTHER SPECIAL COURSES:**

CENTURY 21 (REAL ESTATE)     Oakton Coll. (Continue Ed Cl.)
TRUMAN COLL. (Travel & Airlines)

## EMPLOYMENT HISTORY

PRESENT POSITION:

LOCATION: ETHS

JOB DESCRIPTION Assn. Coordinator

RECEIVED Oakton Community College FEB - 7 2009 HUMAN RESOURCES

# PAN

## Personal Action Notice

**Effective Date:** 3/21/2009

### Personal Data:

**Name** Catherine Oyebanjo
**BannerID** B02020363
**SS#** 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
**Address**
**Hire Date**
**Telephone #**

### Position Data:

| | Staff AD | CE | Faculty CM | CN | Administrators CP | PC | Status: PS | TS | TU | Full Time TF | FF | Grant |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

**Category**
**Eclass** AD

**Hrs/Week**
**Shift:** S=7% T=10% Z=Both G=Grant (Fed) (State) R=Grant & Shift **Premium Pay:** 7%

**Supervisor** Anna Shipulina
**Position # and Title** C99685 Office Coordinator Assistant ALL 10%
**Location** ETHS
**Home Department/Org** 416801
**Check Distribution** 999999
**Time Sheet Org** 416800

### (Please circle)

New Hire      Promotion      Transfer      Reclass/Reorg      Other      Authorized Leave with Pay

**Salary Action:** Union      Confidential      FOP      Deceased

**Salary**
**Previous Salary**
**Salary Adjustment**
**Salary Change**
**Grade** 7 **Step 1**

**Termination:** Voluntary      Involuntary      Retirement

**Comments:** Promotion

_D. Anne Odl_ 03/19/09
D. Anne Oudenhoven, Assoc VP for Human Resources      Date

_Donna Keene_
Administrator      Date

Administrator      Date

Employee

### Distribution:

Payroll      Business & Finance      Human Resources      Union      Employee

# PAN

## Personal Action Notice

**Effective Date:** 9/2/2008

**Personal Data:**

**Name** Oyebanjo, Catherine
**BannerID** B02020363
**SS#** 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
**Address** 2020 W. Farwell Avenue
**Hire Date** 9/2/2008
**Telephone #** 773-262-3832

Chicago, IL        606:45

**Position Data:**

| Category | Staff | Faculty | | Administrators | | Status: | | Part Time | | Full Time | Grant |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Eclass** | AD    CE | CM    CN | | CP    PC | | PS | | TS    TU | | CA | |

**Hrs/Week** 25

**Shift:** S=7%   T=10%   Z=Both   G=Grant   (Fed)   R=Grant & Shift   **Premium Pay:** 7%
(State)   10%

**Supervisor** Christine Slabinger

**Position # and Title** C99685 – Office Coordinator Assistant - ALLiance

**Location** ETHS

**Home Department/Org** 416800

**Check Distribution** 416800

**Time Sheet Org** 416801

**(Please circle)**   New Hire   Promotion   Transfer   Reclass/Reorg   Other

**Salary Action:**   Union   Confidential   FOP

**Salary**

**Previous Salary**

**Salary Adjustment**

**Salary Change**

**Grade** 7 **Step** 1

**Termination:**   Voluntary   Involuntary   Retirement   Deceased

**Comments:**

_D. Anne Oudenhoven, Assoc VP for Human Resources_        09/17/08

Administrator                                      Date

**Distribution:**   Payroll   Business & Finance   Human Resources

_[signature] Keue Quapos_

Administrator        Union        Employee

Date

SmartZone Communications Center Collaboration Suite      ocatherine227@comcast.net

---

## Fw: [Fwd: Follow-up to our meeting on 01/27/2010]

Tuesday, February 09, 2010 1:07:17 PM

From: kristinasmith3@yahoo.com
To: ocatherine227@comcast.net
Reply to: kristinasmith3@yahoo.com

Sent from my Verizon Wireless BlackBerry

-----Original Message-----
From: "Kristina Smith" <ksmith@oakton.edu>
Date: Mon, 8 Feb 2010 21:24:46
To: <kristinasmith3@yahoo.com>; <vernon100584@yahoo.com>
Subject: [Fwd: Follow-up to our meeting on 01/27/2010]

-------------------------- Original Message --------------------------
Subject: Follow-up to our meeting on 01/27/2010
From:    "Kristina Smith" <ksmith@oakton.edu>
Date:    Mon, February 8, 2010 9:23 pm
To:      mmartens@oakton.edu
Cc:      ashipuli@oakton.edu
         keene@oakton.edu
----------------------------------------------------------------------

Hello Mum,

I spoke to Anna this afternoon and she mentioned that you were planning on
calling me. Since I didn't hear from you I figured I'd update you on my
thoughts. In light of the recent shooting that occurred here at Evanston
Township High School the evening of Friday, February 5, 2010, I feel it is
pertinent to inform you that I still feel very unsafe, even moreso than
before.

I know that a shooting is not directly related to safety here, as it is
something that can happen anywhere. My point is that when we have lax
security it makes us more vulnerable to these situations if, and now,
when, they do arise.

The two to three times that I have expressed my concerns both verbally and
via email about security personnel falling asleep at the entrances and the
fact that students banned from the building have been able to get past
security, I have been told that those problems lie within ETHS and that
it's nearly impossible for all unauthorized persons to be apprehended
before entering the building and then eventually our office.  I am sure it
would be quite a challenge but I just do not feel as though the
precautions that have been/are being taken, are as strenuous as they
should be.

I have also been told before, based on the opinion of others who do not
work here at ETHS on a regular basis; that I am not at risk and that I
need not worry so much. I discussed with you my deep concerns and I must
be honest, when I met with you, I did not feel as though I had your
sincere understanding and support.  While we did go over my worries, I
felt as though you were more interested in discussing subjects surrounding
Catherine than my concerns about safety here. When we did discuss my fears
and discomfort, I heard responses such as, "...be careful not to make
assumptions." "We can't control everything." and "..there are some
inconsistencies." I'm still not quite sure what inconsistencies there
could have been when I was sharing my personal experiences and opinions
with you.  I'm being truthful in letting you know that, I felt as though

my experiences were discounted.

I know Oakton does not aim to have employees in unsafe or uncomfortable
environments. I know that what has been going on in recent months has been
a lot for everyone. For me it has been even more arduous because I am
dealing with a lot here from many different angles.

Do you have an update for me or a new plan of action? I know you said you
would talk to Lee Austin and I know that you did. What about?  I'm not
sure. Nonetheless, my concern is that there be some sort of understanding
between ETHS safety stationed at the entrances and Oakton. I don't find it
comforting to hear, very nonchalantly, that some safety issues Oakton just
can't control, because if we are assigned here at ETHS, we should have
some input.

With all do respect, I am merely making another attempt to bring to your
attention that, I still do not feel secure, nor do I believe I am secure,
regarless of anyone else's opinion. Please understand that I have not
intended any impudence.  If this email comes off brash it is because I'm
very, very distressed by my work environment.


Respectfully,

Kristina

**Current Folder: Sent**

**Subject:** Re: update
**From:** "Catherine Oyebanjo" <oyebanjo@oakton.edu>
**Date:** Tue, February 9, 2010 7:40 pm
**To:** "Kathleen M. DeCourcey" <kathleen@oakton.edu>
**Priority:** Normal
**Options:**

Hi Kathleen,
I did meet with Arnie today. Arnie said their wouldn't be any disciplinary
actions arising from our meeting so, union representation wasn't needed. I
was somewhat disappointed at some questions and really felt like I was
there for him to draw his own conclusion about my condition based on my
personal appearance. We kind of went over everything that I already
stated, and nothing was decided as to what will come of this situation.
I will talk to you more in details tomorrow.
Thank You,
Catherine


> I talked to Patty Lucas and you do have the right to union
> representation at a meeting with Arnie, but you must state at the
> beginning of the meeting that if this meeting could lead to
> disciplinary action, you would like union representation. At that time,
> the meeting should be postponed (no longer than 24 hrs) until a union
> rep. can be present.

> Let me know if you contacted HR yesterday, as we discussed, to inform
> them of the FMLA documentation being mailed by your son and faxed from
> the doctor's office. <br>
>
> Take care,
> Kathleen
>

Move to:  INBOX          **Move**



**Oakton**
Community College

Office of
Human Resources

1600 East Golf Road
Des Plaines, Illinois 60016
847.635.1675
Fax 847.635.1764

January 29, 2010

Ms. Catherine Oyebanjo
PO Box 227
Evanston, IL 60204

**VIA E-MAIL AND OVERNIGHT MAIL**

Dear Ms. Oyebanjo:

Since January 11, 2010, you have not reported to work and have been calling in sick to cover the absence. You were instructed to provide medical documentation to support the use of sick time.

The documentation that you provided from Dr. Eric Christoff does not verify that you are currently receiving treatment for any medical condition that renders you unable to perform the duties of your position. The documentation simply includes a statement indicating your presence at an office visit and the physician's observation that you exhibited "anxiety", "panic attacks", and "elevated blood pressure". Dr. Christoff indicated his personal opinion that you should not report to work based upon your allegations of your work environment being unsafe. Your physician's report does not disclose that you received or required treatment for any adverse medical symptoms, or that your current medical condition prevents you from performing your duties as an office coordinator.

Over the past week, the College completed a thorough review and investigation of the work site, coworkers, and your allegations regarding threatening statements and an unsafe work environment. Upon conclusion of the investigation, the College determined that there was no credible threat to your physical safety in the workplace or any evidence of an unsafe work environment.

Your extended absence from work began the first work day following your statement to your supervisor of your intent to resign your position. During a telephone conversation on January 7, 2010 with your supervisor, Ms. Anna Shipulina, you stated your intention to resign effective January 28, 2010. Ms. Shipulina followed up with a written confirmation to you. Subsequent to your receipt of the written confirmation, you denied the fact that you had stated your intent to resign your position.

Your continued absence from work is an unauthorized leave and your physician's note is documentation to support your request for paid sick leave. Accordingly, you are directed to report to work on February 1st. If you do not report to work as directed, your absence from work will be treated as a resignation from employment effective January 29, 2010.

You are to report to the Ray Hartstein Campus at your regular start time on Monday, February 1, 2010.

Sincerely,

D. Arnie Oudenhoven
Associate Vice President, Human Resources

Cc: D. Keene, M. Martens, B Rizzo

PL. Exhibits "3" Termination Letter
FMLA Compliance

From:       "Arnie Oudenhoven" <aoudenho@oakton.edu>
Subject:    MTG
Date:       Tue, February 2, 2010 6:00 pm
To:         "Catherine Oyebanjo" <oyebanjo@oakton.edu>
Cc:         "Donna Keene" <keene@oakton.edu>

Ms. Oyebanjo,

This morning I did receive a fax from Dr Christoff  dated February 1,
2010 with updated medical information.  I would like to meet with you to
review the updated medical documentation and to discuss any
accommodation related it and your condition.   I would like to meet at
5:30 pm tomorrow (Wednesday, February 3, 2010) in the conference room in
Donna Keene's office suite at RHC.  Would you please confirm you
attending the meeting?  Thank you and have a good evening.

Sincerely,

D Arnie Oudenhoven
Associate VP for Human resources

From: "Catherine Oyebanjo" <oyebanjo@oakton.edu>
Subject: Re: Reporting to Work/FMLA
Date: Tue, February 2, 2010 5:33 pm
To: "Arnie Oudenhoven" <aoudenho@oakton.edu>
Cc: "Arnie Oudenhoven" <aoudenho@oakton.edu>,"Donna Keene" <keene@oakton.edu>,"Barb Rizzo" <rizzo@oakton.edu>,"Beth Taylor" <betht@oakton.edu>

Arnie Oudenhoven,
Please be aware that the initial physician s's statement was sufficient
per Mum Martens request.
Mums request was to speak with me via telephone and,a statement as to
when could I return to work. The initial physician s's statement was not
meant to support FMLA. The request for FMLA was not until February 1,
2010.

As for your plans to continue to monitor the work environment to make it
safe is and insult as long as  employee's like Julie Berman and Tynon
Authors remain employed by the college.
Sincerely,
Catherine Oyebanjo

> Ms. Oyebanjo,
>
> I have noted your request for a Family Medical Leave and will have Ms.
Beth Taylor, Benefits Specialist, forward you the forms.  Please be
aware that the initial physician's statement was insufficient to support
sick leave or an FMLA leave.
>
> To be eligibility for FMLA you need to submit an FMLA form that
> certifies your personal health condition. The basis of the
> determination of an FMLA leave qualifying condition is the submission of
the medical certification.
>
> The medical documentation that you did provide did not advise us of your
being unable to work due to a personal medical condition.  It did not
indicate any ongoing medical treatment or any time frame for your
subsequent return to work.  It did not provide support for your not
being at work short of your allegation that the workplace was
> threatening and an unsafe environment. Consequently, you are obligated
to report to work.  For these reasons I respectfully direct you to
return to work.  Please report at your usual time and location on
Tuesday.
>
> Based upon your failure to report to work as previously directed, as of

From:       "Catherine Oyebanjo" <oyebanjo@oakton.edu>
Subject:    Re: REQUEST FOR FAMILY MEDICAL LEAVE OF ABSENT
Date:       Mon, February 1, 2010 11:26 am
To:         "Arnie Oudenhoven" <aoudenho@oakton.edu>
Cc:         "Anna Shipulina" <ashipuli@oakton.edu>,"Donna Keene" <keene@oakton.edu>

Dear Mr. Oudenhoven,
Your investigation appears bias, falls short of the truth and, is very
much inaccurate.

My Doctor and I complied with every request Mum Martens asked for. If
anything further was need, your department should have requested it before
closing you thought internal investigation.

Your investigation fails to substantiate Anna's claim as well.
No, because Catherine Oyebanjo did not tell Anna that she is or will
resign.Clearly that is wishful thinking on the college behalf. Not to
mention it would have been perfect during an investigation for me to just
disappear, making it easy for Anna and the Alliance Department.

I will continue to follow the advise of my physician. I am not and, will
not be intimidated by your inaccurate internal investigation.

Your department intentionally overlooked many important facts during your
investigation and as a result is requesting my return to work which
strongly goes against my safety and, my Doctors medical advice and
concerns for his patient.

This is not a notice of resignation however,I cannot stop your department
form taking it's own decision and actions.

At this time my Doctor has not concluded with his medical follow-up, and I
hear by request to be put on a FAMILY MEDICAL LEAVE OF ABSENTS.

Thank You,
Catherine Oyebanjo


> <!DOCTYPE html PUBLIC "-//W3C//DTD HTML 4.01 Transitional//EN">
> <html>
> <head>
> </head>
> <body bgcolor="#ffffff" text="#000000">

Current Folder: **INBOX**

| | |
|---|---|
| Subject: | Follow Up |
| From: | "Arnie Oudenhoven" <aoudenho@oakton.edu> |
| Date: | Tue, February 16, 2010 1:04 pm |
| To: | "Catherine Oyebanjo" <oyebanjo@oakton.edu> |
| Cc: | "Beth Taylor" <betht@oakton.edu> ( ) |
| Priority: | Normal |
| Options: | |

Hi Catherine,

Thank you for meeting last Tuesday. It was helpful to meet and to discuss the various elements related to your not being at work. Over the 2 1/2 hours we were able to discuss your FMLA request, the medical documentation provided by Dr. Christoff, the Building Supervisor position and security operations and staff at ETHS, and the relationships among and within the staff and management/supervisory personnel in the Alliance Community Education operations.

Regarding the FMLA, I did comment on the nature and content of the medical certification form and prior medical documentation received from Dr. Christoff. In short, it was absent medical facts related to your personal health condition. It would need to include symptoms, diagnosis and regimen of continuing treatment. Beth Taylor has already sent to you the documents requesting the medical facts related to your condition. That information is necessary to determine the qualification for an FMLA leave as well as authorized sick leave. Please have them completed as soon as possible.

The only time frame for your requested FMLA leave was Dr Christoff's written comment to "..see him again in one month". I added that if you felt able to work prior to that time you could have Dr Christoff provide medical clearance for you to come back to work at that point in time. I did offer the opportunity for you to see another physician at the College's expense if that would enable you to receive a diagnosis and the supporting documentation necessary for the determination of qualification for an FMLA leave. At the meeting you respectfully declined that offer.

If the College receives satisfactory medical certification of your serious health condition consistent with FMLA requirements, we will approve your FMLA leave request and designate the leave effective beginning with your absence from work on February 1, 2010. You will also be entitled to use any available paid sick leave for any workdays that you were absent due to your medical condition as verified by the physician's medical certification.

Hopefully your treatment is resulting in some progress. Again, thank you for meeting.

Sincerely,

Arnie Oudenhoven

Move to:  INBOX                    **Move**



**Oakton**
Community College

# Notice of Eligibility and Rights & Responsibilities
## (Family and Medical Leave Act)

*FMLA 1st Request Requires more info. (5)*

OMB Control Number: 1215-0181 Expires: 12/31/2011

In general, to be eligible an employee must have worked for an employer for at least 12 months, have worked at least 1,250 hours in the 12 months preceding the leave, and work at a site with at least 50 employees within 75 miles.

## [Part A – NOTICE OF ELIGIBILITY]

TO: _____Catherine Oyebanjo_____
    Employee

FROM: _____Beth Taylor/Benefits Specialist_____

DATE: _____February 1, 2010_____

On <u>February 1, 2010</u>, you informed us that you needed leave beginning on _____February 1, 2010___ for:

_____ The birth of a child, or placement of a child with you for adoption or foster care;

**XXX** **Your own serious health condition;**

_____ Because you are needed to care for your _____ spouse; _____child; _____ parent due to his/her serious health condition.

_____ Because of a qualifying exigency arising out of the fact that your _____ spouse; _____son or daughter; _____ parent is on active duty or call to active duty status in support of a contingency operation as a member of the National Guard or Reserves.

_____ Because you are the _____ spouse; _____son or daughter; _____ parent; _____ next of kin of a covered servicemember with a serious injury or illness.

This Notice is to inform you that you:

**XXX** **Are eligible for FMLA leave (See Part B below for Rights and Responsibilities)**

_____ Are **not** eligible for FMLA leave, because (only one reason need be checked, although you may not be eligible for other reasons):

   _____ You have not met the FMLA's 12-month length of service requirement. As of the first date of requested leave, you will have worked approximately _____ months towards this requirement.

   _____ You have not met the FMLA's 1,250-hours-worked requirement.

If you have any questions, contact Beth Taylor or view the FMLA poster located in Human Resources Department.

## [PART B-RIGHTS AND RESPONSIBILITIES FOR TAKING FMLA LEAVE]

As explained in Part A, you meet the eligibility requirements for taking FMLA leave and still have FMLA leave available in the applicable 12-month period. **However, in order for us to determine whether your absence qualifies as FMLA leave, you must return the following information to us by <u>February 16, 2010</u>.** (If a certification is requested, employers must allow at least 15 calendar days from receipt of this notice; additional time may be required in some circumstances.) If sufficient information is not provided in a timely manner, your leave may be denied.

   **XXX** **Sufficient certification to support your request for FMLA leave. A certification form that sets forth the information necessary to support your request is enclosed.**

   _____ Sufficient documentation to establish the required relationship between you and your family member.

   _____ Other information needed:

   _____

   _____

   _____ No additional information requested.

**If your leave does qualify** as FMLA leave you will have the following **responsibilities** while on FMLA leave (only checked blanks apply):

_____ Contact _____Beth Taylor_____ at ___ext 1818___ to make arrangements to continue to make your share of the premium payments on your health insurance to maintain health benefits while you are on leave. You have a minimum 30-day (or, indicate longer period, if applicable) grace period in which to make premium payments. If payment is not made timely, your group health insurance may be cancelled, provided we notify you in writing at least 15 days before the date that your health coverage will lapse, or, at our option, we may pay your share of the premiums during FMLA leave, and recover these payments from you upon your return to work.

**XXX** You may use your available paid **sick or vacation**, during your FMLA absence. This means that you will receive your paid leave and the leave will also be considered protected FMLA leave and counted against your FMLA leave entitlement.

_____ Due to your status within the company, you are considered a "key employee" as defined in the FMLA. As a "key employee," restoration to employment may be denied following FMLA leave on the grounds that such restoration will cause substantial and grievous economic injury to us. We ___ **have**/ ___ **have not** determined that restoring you to employment at the conclusion of FMLA leave will cause substantial and grievous economic harm to us.

**XXX** While on leave you may be required to furnish us with periodic reports of your status and intent to return to work **every 30 calendar days**.

**If the circumstances of your leave change, and you are able to return to work earlier than the date indicated on the reverse side of this form, you will be required to notify us at least two workdays prior to the date you intend to report for work.**

**If your leave does qualify** as FMLA leave you will have the following **rights** while on FMLA leave:

- You have a right under the FMLA for up to 12 weeks of unpaid leave in a 12-month period calculated as a rolling 12 month period measured backward from the date of any FMLA leave usage. **This 12 month period began on February 1, 2010.**

- You have a right under the FMLA for up to 26 weeks of unpaid leave in a single 12-month period to care for a covered service member with a serious injury or illness. This single 12-month period commenced on _____

- Your health benefits must be maintained during any period of unpaid leave under the same conditions as if you continued to work.

- You must be reinstated to the same or an equivalent job with the same pay, benefits, and terms and conditions of employment on your return from FMLA-protected leave. (If your leave extends beyond the end of your FMLA entitlement, you do not have return rights under FMLA.)

- If you do not return to work following FMLA leave for a reason other than: 1) the continuation, recurrence, or onset of a serious health condition which would entitle you to FMLA leave; 2) the continuation, recurrence, or onset of a covered service member's serious injury or illness which would entitle you to FMLA leave; or 3) other circumstances beyond your control, you may be required to reimburse us for our share of health insurance premiums paid on your behalf during your FMLA leave.

- If we have not informed you above that you must use accrued paid leave while taking your unpaid FMLA leave entitlement, you have the right to have **sick, vacation,** and/or **other leave** run concurrently with your unpaid leave entitlement, provided you meet any applicable requirements of the leave policy. Applicable conditions related to the substitution of paid leave are referenced or set forth below. If you do not meet the requirements for taking paid leave, you remain entitled to take unpaid FMLA leave.

_____For a copy of conditions applicable to sick/vacation/other leave usage please refer to _____ Agreement available on the Human Resources web page.

_____Applicable conditions for use of paid leave:

_____

_____

_____

_____

_____

**Once we obtain the information from you as specified above, we will inform you, within 5 business days, whether your leave will be designated as FMLA leave and count towards your FMLA leave entitlement. If you have any questions, please do not hesitate to contact:**

_____ Beth Taylor/Benefits Specialist   847-635-1818   betht@oakton.edu _____

**PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT**
It is mandatory for employers to provide employees with notice of their eligibility for FMLA protection and their rights and responsibilities. 29 U.S.C. § 2617; 29 C.F.R. § 825.300(b), (c). It is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 10 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC 20210. **DO NOT SEND THE COMPLETED FORM TO THE WAGE AND HOUR DIVISION.**



## CERTIFICATION OF HEALTH CARE PROVIDER
## FOR EMPLOYEE'S SERIOUS HEALTH CONDITION
**(FAMILY AND MEDICAL LEAVE ACT)**
OMB Control Number: 1215-0181 Expires: 12/31/2011

### SECTION I: For Completion by the EMPLOYER
**INSTRUCTIONS to the EMPLOYER:** The Family and Medical Leave Act (FMLA) provides that an employer may require an employee seeking FMLA protections because of a need for leave due to a serious health condition to submit a medical certification issued by the employee's health care provider.

Employer name and contact: <u>Oakton Community College/Beth Taylor - 847-635-1818/betht@oakton.edu</u>

Employee's job title: <u>Catherine Oyebanjo</u>  Regular work schedule: <u>25 hours/week</u>

Employee's essential job functions: <u>See attached job description</u>

### SECTION II: For Completion by the EMPLOYEE
**INSTRUCTIONS to the EMPLOYEE:** Please complete Section II before giving this form to your medical provider. The FMLA permits an employer to require that you submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to your own serious health condition. If requested by your employer, your response is required to obtain or retain the benefit of FMLA protections. 29 U.S.C. §§ 2613, 2614(c)(3). Failure to provide a complete and sufficient medical certification may result in a denial of your FMLA request. 20 C.F.R. § 825.313. Your employer must give you at least 15 calendar days to return this form. 29 C.F.R. § 825.305(b).

Your name: <u>Catherine</u>   <u>Oyebanjo</u>
        First         Middle       Last

### SECTION III: For Completion by the HEALTH CARE PROVIDER
**INSTRUCTIONS to the HEALTH CARE PROVIDER:** Your patient has requested leave under the FMLA. Answer, fully and completely, all applicable parts. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your best estimate based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage. Limit your responses to the condition for which the employee is seeking leave. Please be sure to sign the form on the last page.

Provider's name and business address: <u>Eric Christoff, MD   NMPG 1460 N Halsted #501</u>

Type of practice / Medical specialty: _____

Telephone: (<u>312</u>) <u>9263627</u>   Fax: (<u>312</u>) <u>9263231</u>

**PART B: AMOUNT OF LEAVE NEEDED**

5. Will the employee be incapacitated for a single continuous period of time due to his/her medical condition, including any time for treatment and recovery? ___No ✓Yes.

If so, estimate the beginning and ending dates for the period of incapacity: *unsure*

6. Will the employee need to attend follow-up treatment appointments? ___No ___Yes. Will the employee need to work on a part-time or on a reduced schedule because of the employee's medical condition? ___No ___Yes.

If so, are the treatments or the reduced number of hours of work medically necessary? ___No ___Yes.

Estimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period:

*See me in one month*

Estimate the part-time or reduced work schedule the employee needs, if any:

_____ hour(s) per day; _____ days per week from _____ through _____

7. Will the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions? ___No ___Yes

Is it medically necessary for the employee to be absent from work during the flare-ups?
✓ No ___Yes If so, explain:

_____

_____

Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days):

Frequency: _____ times per _____ week(s) _____ month(s)

Duration: _____ hours or _____ day(s) per episode

**ADDITIONAL INFORMATION:** IDENTIFY QUESTION NUMBER WITH YOUR ADDITIONAL ANSWER.

*Pt will need to be off work until blood pressure better controlled and work environment safer.*

**ADDITIONAL INFORMATION:** IDENTIFY QUESTION NUMBER WITH YOUR ADDITIONAL ANSWER.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Signature of Health Care Provider**                                    **Date**

### PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT

If submitted, it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500.Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 20 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC 20210. **DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT.**

Revised January 2009

P.O. Box 227
Evanston, Illinois 60204
Phone (773) 262-3832
Mobile(773) 807-1955
ocatherine227@comcast.net

March 4, 2010

I was employed by Oakton on September 2, 2008.  Since being employed with Oakton's establishment, I have had to deal with too many issues concerning  an unsafe work environment , threats against my life, sexual harassment , age discrimination, race discrimination, unfair treatment, and  countless discriminatory statements made directly by my immediate  supervisor (Anna Shipulina). I have suffered with too many fears, and discomforting situations while being employed with Oakton Community College.

On January 7th, 2010 my life was threatened by Tynon Authors the( Building  Safety Supervisor) who was hired by Donna Keene( Senior Director of Lifelong Learning Operations & Programs) to provide safety to our off site office. The threat was serious enough to cause a very traumatizing affect on my health and safety which forced me away from  my working environment.

Long before the  threat,  I  listened  to many sexual encounters Tynon  Authors had with his wife,  abusive behavior he inflicted on  his two year old son, and many  unappreciated dysfunctional statements about him and his family. Kristina ignored many unwanted advances  from Tynon Authors,  both Kristina and I heard many harsh and demeaning stories about black and white women while  simply trying to do our jobs.

From day one it was very stressful working with Mr. Authors, money was stolen from the office while he was left alone to watch the office. It was obvious he took the cash and, he told Kristina he took the file cabinets (property of ETHS) home to be used as a dresser. This was stealing, because he did not have  consent from the high school to remove their property form it's premises.

Safety has always been an issue on top of the many inconsistencies that continues to be  known with in Oakton's Alliance Department.

Before Tynon Authors I remember safety being a problem . I worked alone many nights , I had to deal with another Building Supervisor Dexter Calhoun who at one time , sat in his car while on the clock and smoked marijuana . Dexter came into the office and it was apparent ,his ability to make  any form of decisions, or judgments was greatly impaired.  This  greatly affected my safety because, he was the Building Safety Supervisor who was hired  and paid much more to provide me with safety in the work place.

Each and every issue I encountered was first brought to our  immediate supervisor Ms. Anna Shipulina, who

PL, Exhibit "A"

made matters much worse. Anna's lack of experience and her unprofessional non- approach greatly helped to prolong the harsh racial and degrading treatment I received from Christine Slabinger (Formal Office Coordinator ETHS) and all the sexual harassment, unwanted dysfunctional behavior I witnessed with Tynon Authors.

After Anna was informed about Tynon on October 22, 2009 , she did nothing but made stupid excuses and literally blamed me for not giving him a chance, she felt he needed someone to listen to him, she said we should be more understanding and try to get alone with him.

Well, I tried . Weeks went by and I stopped him from having non productive conversations that was not pertaining to his work, in our work environment. Tynon grew very resentful of me, he felt I was blocking his sick ,perverted, and unwanted sexual desires he was having for Kristina Smith . He was fascinated with her , strongly admired her, and wanted to be more than the Building Supervisor . The problem was I got in the way of his sick obsession.

I kept him very busy , and redirected his responsibilities more outside of our office area and in the main school where he was most needed . Tynon was very unhappy. On January 5th Tynon showed just how unhappy he was with me keeping him out of the office and away from Kristina. Tynon Authors threatened my life. I was under so much stress. I could not sleep for days, I went to work without sleep, I was unable to concentrate or focus on my work. Later I recalled asking Kristina about things that I knew, and trained her to do. Every time I saw Tynon I would experience panic attacks. Having to face a person who threatened my life caused me severe emotional stress . Seeing him and having to work around him had everything to do with my blood pressure elevating to such high and dangerous levels. I was so afraid and felt so unprotected and unsupported by my employer especially after having a meeting earlier that day Jan. 7th with Barbara Rizzo (Vice President for Continuing Education ) and Anna Shipulina (my inconsiderate, selfish, power hungry supervisor) who dismissed many important facts about Tynon. Barb Rizzo , who knows nothing about anything below the administrative level , agreed with Tynon and accused me of an incident which accrued with Kristina Smith and Julianna(an ESL Instructors) while I was away on vacation. Barb and Anna felt Tynon was being mistreated , no one listened and discarded most of what I said, and knowingly accused me of others actions , while discriminating against my age . This was not the first time Anna made discriminatory remarks in reference to my age.

Personally, Kristina or I never had anyone support or understanding at Oakton Community College. It's sad to think that we didn't matter, we are two African American women working at an off site location and all this happen and no one takes it serious .
I contacted Mum Martens myself, after having several email disagreements with Anna Shipulina. No one from HR had ever made any attempt to contact me. I contacted HR because I had nothing to hide . I was tried of being pushed around ,overlooked, and taken for granted by Anna. Anna sent Mum and email claiming I made a distinct discriminatory statement towards her therefore, I contacted Mum to ask her to please feel free to investigate all the distinct discriminatory statements Anna has been associated with. It 's amazing how Anna Shipulina works very hard to cover her tracks and clean up her dirty work. She takes the time to forward an email to HR when it benefits her. My life was threatened and HR don't respond until she complains about me.

Due to a stressful work environment , my Doctor ordered me not to return to work until my work place create a safer working environment. Therefore , my Doctor granted permission for Mum Martens to speak with me via telephone . I spoke with Mum Martens on January 25, 2010. I expressed all of my concerns dating back to the start of my employment and a heavy concentration was emphasized on my fears, and safety after being threatened by Tynon Authors on January 5th , 2007. We spent close to three hours speaking about the past and current issues at Oakton. Mum interviewed other staff members , and most of them informed me that instead of being concerned about issues related to our safety or working environment , and the threat

against my life as part of her investigation, Mum Martens was more concerned with trying to get my co-workers to help substantiate Anna's false allegations that, during a conversation with her on January 7th 2010, I suppose to have told her that I was going to resign. We had a conversation however, no mention of a resignation was ever discussed. Mum Martens went to ETHS to question Kristina Smith, Mum asked Kristina was she aware that Catherine had cleaned out her desk, implying that I had no intention of returning. The fact that Mum never used my computer. She made the statement that I had cleaned off the desk top of my computer. Kristina said, she was deeply insulted because obviously making a statement like that Mum did not know Catherine. My desk, working environment, and complete office was always clean, organized, and clutter free. Due to the fact that Oakton are renters at ETHS and they use our computers when our office is not in use. Therefore, I never stored documents on the desk top of my computer. I used the desk top do report and remove them once I completed my project. Anna knew this because many times she would inform the coordinators not to leave sensitive information on the desk top of our computers. It was quite obvious that Anna had began to paint a bad picture of me. At this time Kristina made an attempt to express her concerns about Tynon Authors. Mum told her be careful she don't want to make any assumptions. Mum verbally agreed with Kristina and I, that their was some inconsistencies with the program. Mom agreed with us that there needs to be some changes with Anna's inability to manage others. Then Mum tried to justify Anna's behavior by saying

(Catherine, you know Anna really haven't been a manager for that long). My response to Mum's statement was (Mum, I don't care if she's only been a manager for one day, accountability started the day the college promoted her and she excepted the position. Mum said, she needs a few weeks to speak with other people before concluding her investigation.

A few days went by, on Friday January 29th I got a call at 4:50pm from Barbara Rizzo requesting that I return to work on Monday February 1st, 2010 at my scheduled time at the Ray Hartstein Campus. Barb said, a letter was sent to my email.

I checked and it was there. It was a letter from Arnie Oudenhoven (Associate VP Human Resources) requesting my return back to work, informing me of the college finding with it's investigation. Basically the college only did an internal investigation which I expected the college to rule in it's own favor. I never expected Oakton Community College to rule in my favor and admit to any wrong doing. Many people like Arnie, Mum and even people part of the union admits there's a serious problem with many of the college policies and the Alliance Department is know for it wick -it, underhanded, controlling administrators who dominate and keep everyone under them afraid. It was stated to me (by one of the union representatives) that Alliance Department is the worse when it comes to violating it employee's human rights.

After Arnie and Barbara Rizzo attempt to have me return to the same unsafe working environment that forced me away, I was forced to seek a Family Medical Leave of Absents. At that time I was still under my Doctors care trying to control dangerous levels of elevated blood pressure, anxiety attacks, and very stressed out from being threaten by Tynon Authors (the building supervisor for ETHS). My doctor felt I need more time away from work, at least until my job had made some form of changes that would create a safe working environment.

The feeling of being over powered with lies from a demanding and controlling supervisor, having my life threaten, and no support or genuine concern from the college was enough to cause the many stressful feelings and related health issues I have had to endure over the last few months.

Requesting a FMLA was taken very personal by the college. I am aware that much information is needed in determining eligibility status. However, the way I have been treated by Arnie Oudenhoven (Associated VP Human Resources) during this process is quite in human, degrading, and unethical.

Arnie threatens me with the loss of my job in exchange for me to meet with him at the Ray Hartstien campus, despite the fact that my physician statement stated. I was not to come to work and not to mention I was not feeling well at that time. The fact that the college had not approved a family medical leave of absents did not mean my doctors orders for his patient( who was experiencing elevated blood pressure, which was causing painful headaches both in front and in back of my head, and at times chest pains) was to be discarded. Although at that time all related facts surrounding my request for FMLA was not known, what was known was, Arnie was aware that my situation was on going and, I was not suppose to be at work for no reason at that time, and I would not have been there if Arnie had not threaten me with the loss of my job. Again, Arnie disregard my safety forcing me to take a risk with my life for the sake of keeping my job.

This was truly an insensitive move on the College part.

This meeting was truly and injustice/insult.

Sincerely,

Signature

I became employed with Oakton Community College as of September 2, 2010.Once employed with the college I felt it was truly a pleasure to work with-in its establishment.

Weeks later I began to experience on going harassment which did not stop until Christine Slabinger resigned. After Anna Shipulina was made aware of all the negative racial comments made by Christine ,she went to Donna who followed up with human resources. In light of everything said about black people, myself, the students and other staff Anna said, Donna felt a need to follow up with HR because of the comments Christine made about **her.**

Christine was repremanded and written up afterwards, resentment grew stronger and her racial attacks became more mentally challenging, directed solely at me. I went back to Anna more than twice. The first time, I called Anna via telephone form home and her response after I explain how things had worsen for me was, **(Catherine you two just have to learn how to talk, it's not that bad, I'm going to stay out of the small stuff).** The second time I spoke with Anna was the day of our monthly staff meeting in January 2009. Anna response to my ongoing racial attacks was **(you are taking this too personal; I can tell in your voice you are letting this get the best of you, learn to take it easy and don't take it so personal).** It was obvious I no longer had my supervisor's support especially since the attacks no longer involved her. This behavior went on until late January of 2009 when Christine called to resign via telephone January 26,2009

Shortly after Christine resign, Dexter Calhoun our Building Supervisor became very relaxed. Dexter would leave his responsibilities to workout in ETHS fitness center or play basketball in the high school gym room. Many nights Dexter came to work with his uniform attire, which was a known safety violation at the high school. As time went on Dexter became more comfortable and start to disrespect the work environment by singing out in a loud voice in the office while testing was being conducted in nearby rooms. Not to mention the night he walked into the office after disappearing for more than two hours smelling like **Marijuana.**

No I didn't see him smoke marijuana but, I know he did. He did It in his car while parked in the front of the school. When he came inside, I immediately noticed a change in his demeanor. The scent was so strong; I remember catching an instant headache while trying to stay focused on my work, I was working alone.

Much later Kristina Smith was hired to be the Asst Coordinator. Both Kristina and I started to complaint about Dexter to Anna and Donna then, Donna was forced to have Dexter removed after he became a total liability to Oakton, the staff, and students.

PL. Exhibit "B"

I had many headaches before Donna decided to do something about Dexter. Many times I was asked to document things they already had knowledge about prior to me being hired. I was asked to follow Dexter to the gym to see if /or where Dexter was and document his coming and going . Anna or Donna never came out to investigate none of the issues like supervisors and managers are expected and, had no regards for me trying to do my work while asking me to keep tabs on an employee who they was already aware of.

Dawn Carroll, who's been with Oakton for many years and knows everyone told me that (Dexter's behavior was not new, that he slowed down because I was new to the office and once he get the feel for me he would likely continue his old pattern. Dawn went on to say she heard that Dexter Calhoun and Robyn Bailey were cousins and that was the reason he was given the slack for so long) until, he became a known liability in the eyes of too many people. I don't know or care if that was true, what brothers me , my safety was compromised for too long in this matter.

After Christine Slabinger resigned, long before Kristina Smith was hired and, before I was promoted the office coordinator, I was doing **two** jobs. *During this period it was very stressful physically, and mentally. Most nights I worked alone, and people like (Helen Grossfeld and Jeri Paul, (big fans of Christine Slabinger) would complaint about the way things were not being done at Evanston.* Knowing that Evanston did not officially have an office coordinator. My supervisor did not support me. To appease Helen and Jeri, Anna started requesting that I follow the job description of the office coordinator .Of course, I felt pressured being the only one there so, I tried to do the my best .

I was not interested in being an office coordinator but, since the job description was forced into my hands and once the position was posted, I felt obligated to apply. The reality was my supervisor was going to *use* me to train someone new to do a job that I was forced to learn and not to mention that person would be paid more. To avoid having to re- train someone new to do a job I was forced to learn, I applied for and got the position just like Dawn Carroll said I would. Dawn was right, it made no sense for me to train someone else to make more money than I was making.

Many time in the evening while working alone, if I would encounter problems and there was no one to turn to . Anna grew tried of my telephone calls very quickly. then I was told don't call her in the evening unless it was important. Anna said everything else could wait until the next day. By the way, I forgot to mention she had me drive all the way to Skokie before reporting to my site just to tell me how stressful her day and night was and don't call her when it's not important.

Weeks later many things happened that I didn't think was important, since I had no way of determining what may or may not be important to Anna. I didn't think she needed me to remind her when spring term end verses the start of summer.

Anna assigned Kristina and me to work in Skokie and DesPlaines while closing our office in Evanston, when it should have been open. Because, Anna fail to play close attention to the count of seats which clearly showed several classes at ETHS would end late June. **(Anna, who makes no mistakes and knows everything)** designed our summer schedules which overlapped with spring classes still in session and requested our appearance at other sites. Our office was closed by Anna, while our students and Instructors showed up for class. Dexter was given the night off as well, leaving no one at Evanston to represent Oakton's night school program.

This created a huge disturbance among the Instructors , student, and ETHS staff. The next day we got calls from the operations department wanting to know why was Oakton on schedule for classes and the staff wasn't there to accommodate our program. Evanston actually thought they did something wrong, while Anna was busy trying to put blame any where she could lay it.

Later when speaking with Donna Keene about how it's not fair for Anna to pick and choose when she wants to play her role as the supervisor. I explained to Donna that I was sorry that happened but , I really felt Anna shut me out and blocked me from sharing very vital information that could have been helpful when she asked me not to call her.

My assumption was that Anna Shipulina knew and understood the program time frame very well. She is a Program Manager , and before that, Anna was the office Coordinator for Skokie. **So, how many times have Anna witness the end of Spring and the beginning of Summer term at Oakton?** Kristina and I were both new to the changes and did not quite know exactly what to expect. Therefore who were we to question the authority and integrity of our supervisor Anna Shipulina.

My very first evaluation with Anna went well. The only problem with the second evaluation ( I felt her personal perception was inconsistent with my abilities, and the job description). Although it is highly respected and considerate of a supervisor to recommend classes when needed especially if the classes helps to enhance the employee performance in the work place. However, I and none of the other site Coordinators needed any classes in **file/ disk management**. Anna is very analytical and controlling when it comes to the computer. How one keeps their files and which drive you choose to store it own is a personal choice. To require that we all be **proficient in banner** is an insult, when all of the so call

Managers and Administrators are not proficient in banner.

Anna's very critical and stern beliefs caused all of the **white Coordinators** to come together and meet with Donna Keene who made Anna **change/adjust** their evaluations to compliment their work performance. On the other hand **I was left out**, my evaluation was not changed and Anna used excessive force in her attempt to make me comply with her belief to improve my performance to her personal design.

When I was hired it was not asked or required of me to speak Spanish, the desire to learn Spanish was my decision based on the cliental of Hispanic students we had in our program. Once I came up with the ideal Anna tried to run with it. Anna would not allow me to take classes during work hours as per the college. she said, I need to take the classes before work or on the week end. Also, it was clear that Anna meant to bully me with this issue.

I went to Anna ending of summer and told her I was planning to take a Spanish class and Activity Director class for fall 2009. She turned pink and started lecturing me. She said, no don't take Activity Director classes, you need Desk top publishing, it will really help you. After feeling frustrated and controlled for months with the whole class issue, not to mention degraded. I didn't register for any classes. It was obvious, Anna was not willing to give her approval on any classes she did not feel was necessary and if they were necessary they had to be taken on my time.

Anna continued to pressure me about taking classes, when I could take them, when I could not take them, which classes to take and, which classes not to take. From the time of my second evaluation on May 20, 2009 **(until I became fed up with being Anna's black experiment project and after many *distinct discriminatory statements, or categories*  in which I was singled out or placed in alone).**



**Oakton**
Community College

Office of
Human Resources

1600 East Golf Road
Des Plaines, Illinois 60016
847.635.1675
Fax 847.635.1764

June 3, 2010

Ms. Catherine Oyebanjo
PO Box 227
Evanston, IL 60204

<u>**VIA EMAIL and US MAIL**</u>

Dear Ms. Oyebanjo,

You have not reported to work since January 19, 2010, and, as of the date of this letter, you have been absent from work for almost 19 weeks. You have exhausted your sick leave time and there are no other leave entitlements available to you.

In late January/early February 2010, you requested a leave pursuant to the FMLA. The College was not able to make a determination whether you qualified for FMLA leave because of the absence of sufficient medical documentation to establish your inability to work due to a serious health condition. Nonetheless, the College permitted you to remain absent from work on an unauthorized leave for a period of time beyond the twelve weeks potentially available to you under the FMLA.

On May 14, 2010, the College sent you a letter notifying you of your obligation to return to work no later than May 20, 2010, and advising you that if you failed to return to work by that date, you would be deemed to have abandoned your job, a determination which would result in the termination of your employment. You neither returned to work, nor contacted your supervisor or anyone at the College by May 20, 2010. Nor did you contact your supervisor or the College to request an unpaid leave of absence after expiration of the 12-week FMLA leave period. Consequently, you are deemed to have abandoned your job and are hereby terminated from employment at the College effective June 3, 2010.

Any accrued but unused vacation time will be paid out and the check sent to the address on record.

Sincerely,

D Arnie Oudenhoven
Associate Vice President for Human Resources

CC  D Keene, Payroll, File

PL. Exhibit "D"

Current Folder: **INBOX**                                                      **Sign Out**

Compose  Addresses  Folders  Options  Search  Help                Oakton Account
Filters                                                                      Management

Message List | Delete         Previous | Next        Forward | Forward as Attachment | Reply | Reply All

**Subject:** [Fwd: Re: Security for ETHS Site]
**From:** "Kristina Smith" <ksmith@oakton.edu>
**Date:** Mon, January 11, 2010 7:37 pm
**To:** oyebanjo@oakton.edu
**Priority:** Normal
**Options:** View Full Header | View Printable Version  | Download this as a file | Bounce


------------------------ Original Message ----------------------
Subject: Re: Security for ETHS Site
From:     "Donna Keene" <keene@oakton.edu>
Date:     Mon, August 31, 2009 2:27 pm
To:       "Catherine Oyebanjo" <oyebanjo@oakton.edu>
          "Kristina Smith" <ksmith@oakton.edu>
Cc:       "Anna-Shipulina" <ashipuli@oakton.edu>
------------------------------------------------------------------

       Ladies,
 Your new building supervisor is Tynon Arthurs. He will begin tonight
will start at 5:30p.m.-10:00p.m. Monday-Thursday. He is a very nice
person. You need to let him know what you want him to do each night.
did explain that he is responsible for opening rooms, helping you to
deliver and pick up things from the class rooms. He said that he woul
learn how to work the AV equipment if instructors need it, he knows n
to leave the building while he is working for us, he knows that he co
be asked to verify our funds he needs to. He has questions so please
share with him what you can about our operations. Catherine, I was
suppose to come at 5p.m, and give Tynon is contract to sign and pick
the rest of his paper work. I will not be able to do that but Robyn
Bailey will be at ETHS tonight and she will do this for me. If you ha
any other questions, just let me know.
    Donna

 Catherine Oyebanjo wrote:    Good Morning Donna, I hope you had a
wonderful weekend! I was wondering if the person you interviewed work
out. If so, who is he and what time should I and Kristina expect him?
assuming that this person will have the same schedule as or last secu
person.    Sincerely, Catherine


                Delete & Prev | Delete & Next              PL. Exhibit "E"

Position: Building Supervisor

Location: Evanston Township H.S.

Employer: Oakton Community College

Employee: **Tynon Arthurs**

Immediate Supervisor: Donna Keene (Senior Director Alliance for Life Long Learning)

Site Coordinators: Catherine /Kristina

The primary responsibility of the Building Supervisor is to assist and follow the general needs of Oakton Community College's office staff. Perform duties as assigned when needed in the office as well as the building surrounding the classrooms used by OCC during operations.

## General Duties and Responsibilities:

Arrive and check- in at 5:30pm.

Go over nightly briefing with Coordinators (needs, routines and any unexpected changes)

Get class lists; distribute one copy to exit 21, one copy to front entrance with safety department, and keeping one in your possession for quick references as needed.

Unlock all classroom doors assigned by the daily class list. Please page office staff before making any change to the room request.

Please, please, please report any unusual conditions in reference to the room which may affect or interrupt class from operating effectively.

Perform any and all necessary set up needed for the classrooms.

Please keep all assigned keys handy in your possession until your shift ends at 10:00pm.

Repeat; please do not turn your keys in before your shift end. (Sometimes it's required of you to lock doors as well as open them).

1

**Monitor the halls and surrounding areas to help maintain safety precautions at all times. Report any and all forms of <u>accidents</u> and or <u>incidents</u> involving OCC students, and Instructors to the Office Coordinators for further follow up. Feel free to extend information to your superiors with ETHS as required for protocol.**

## <u>Expectations of the Building Supervisor:</u>

The Building Supervisor is expected to follow his or her assigned duties and refrain from interrupting the managerial performance and responsibilities of the Office Coordinators.

The Building Supervisor is expected to arrive at 5:30pm. Although, he or she works for OCC unauthorized entry onto the premises for personal leisure time before your scheduled shift is unacceptable and should be avoided while not on the time clock and working for OCC.

While it is expected and sometimes necessary for the Building Supervisor to relay information on behalf of OCC Office Coordinators, extreme caution should be taken when doing so. Please do not take it upon yourself to <u>add</u> or <u>change</u> information thus further complicating the lines of communication.

The Building Supervisor should first report all absence to Donna Keene and follow up with the site
Coordinators so we can make other arrangements accordingly.

If the Building Supervisor is unsure or in doubt about any situation, it is expected of he or she to address it with Oakton's site Coordinators. We are here to help resolve problems on site. Anything that we cannot be of help to the Building Supervisor with, upper management will be delighted to help bring closure to the matter.

The Building supervisor is expected to protect and respect Oakton Community College mission statement at all times. (Loitering in the classrooms is inappropriate and unacceptable).

The Building Supervisor does not have a break time, thus eating, use of a microwave, and dining at the tables while on shift is unacceptable.

**Thank You**

**Catherine / Kristina**

2

## ACKNOWLEDGEMENT OF BUILDING SUPERVISOR
## RESPONSIBILITIES AND EXPECTATIONS

**Wednesday, January 6, 2010**

**This is to serve as an acknowledgement that you have read the Evanston Township High School Building Supervisor responsibilities and expectations outline.**

**By signing this, you agree that you understand the obligations and what is expected of the Building Supervisor.**

_____

**Tynon Arthurs**

_____

**Catherine Oyebanjo**

_____

**Kristina Smith**

From:       "Anna Shipulina" <ashipuli@oakton.edu>
Subject:    Follow up
Date:       Mon, January 11, 2010 9:31 am
To:         "Catherine Oyebanjo" <oyebanjo@oakton.edu>

Hello Catherine,

To follow up with our last week conversations:

The Evaluation Summary is the only Fall 2009 report you still have to submit - it is OK to send it to me today.

As to your decision to resign, I hope you are doing what is best for you.
An official letter of resignation should be send to me with the copy to Human Resources.
I can forward the copy to HR on your behalf as well.

Thanks,
Anna.

**Attachments:**

| ashipuli.vcf |
| --- |
| Size: 0.2 k |
| Type: text/x-vcard |



From:    "Anna Shipulina" <ashipuli@oakton.edu>
Subject: Resignation
Date:    Tue, January 19, 2010 4:50 pm
To:      "Catherine Oyebanjo" <oyebanjo@oakton.edu>
Cc:      "Donna Keene" <keene@oakton.edu>,"Barbara Rizzo" <rizzo@oakton.edu>,"Mum R.
       Martens" <mmartens@oakton.edu>,"Anna Shipulina" <ashipuli@oakton.edu>

Hi Catherine,

Please see the attached memo regarding our phone conversation on January 7.
I will also send you a hard copy to the address you have on file.

Thank you,
Anna.

**Attachments:**

| **Resignation_memo.pdf** | |
|---|---|
| Size: | 16 k |
| Type: | application/pdf |

| **ashipuli.vcf** | |
|---|---|
| Size: | 0.2 k |
| Type: | text/x-vcard |



# Oakton
## Community College

Alliance for
Lifelong Learning

P.O. Box 367
7701 North Lincoln Avenue
Skokie, Illinois 60077
847.982.9888
Fax 847.635.1448

To:       Catherine Oyebanjo

From:     Anna Shipulina        *A.S.*

Date:     January 19, 2010

Subject:  Resignation

CC:       B. Rizzo, D. Keene, Human Resources

This memo is to confirm our telephone conversation on January 7th at 9:35 pm.
regarding your verbal resignation. Your resignation is effective for January 28, 2010.

Thank you.

From:    "Catherine Oyebanjo" <oyebanjo@oakton.edu>
Subject: Oakton's conspiracy to force a resignation claiming no fault.
Date:    Thu, January 21, 2010 9:18 am
To:      "Anna Shipulina" <ashipuli@oakton.edu>
Cc:      "Donna Keene" <keene@oakton.edu>,"Barbara Rizzo" <rizzo@oakton.edu>,"Mum R.
         Martens" <mmartens@oakton.edu>,"Anna Shipulina" <ashipuli@oakton.edu>

Hi Anna,
You are exaggerating the truth.
Yes, we had a conversation but I never gave you a date of resignation.
We talked about the meeting we had earlier that day and how I felt
unheard, unfairly questioned, (about an incident involving Kristina Smith
and one of our ESL instructors, which occurred during my vacation) and,
the fact that both Kristina and I took equal part in writing what we
needed Tynon to do. Both Kristina and I remember being told by Donna Keene
to let Tynon know what we need him to do. After discovering many
miscommunication problems with Tynon who claimed to be confused with
information between the two of us, he  asked that we write down what we
need him to do, and we did.

It was brought to your attention that Tynon bragged to Kristina and
others,how he painted a bad picture of Catherine and how you enjoyed every
word. During his conversation with Kristina she noticed he went to great
length to target me.He said, (Your name was on those papers, but I know
Catherine wrote it).
Your response to hearing that was(O,I thought we resolved this and moving
on).

You heard what you chose to hear and You and Barb believed what you wanted
to believe. Truth be told I was guilty walking into that meeting and held
sole responsible for others actions as well.

Making a decision to leave (will not be something I would do because I
want to).After all that has happened,  I no longer feel safe working for
Oakton Community College Alliance Dept.  With that being said, a lack of
safety, and the fact I fear for my life would be the reason I'm forced not
to return.

Thank You,
Catherine




> <!DOCTYPE html PUBLIC "-//W3C//DTD HTML 4.01 Transitional//EN">
> <html>
> <head>
> </head>
> <body bgcolor="#ffffff" text="#000000">
> Hi Catherine,<br>
> Please see the attached memo regarding our phone conversation on January
7.<br>
> I will also send you a hard copy to the address you have on file.<br> <br>
> Thank you,<br>

Current Folder: **INBOX**

**Subject:** recap on meeting today
**From:** "Robyn Bailey" <rbailey@oakton.edu>
**Date:** Tue, January 19, 2010 4:43 pm
**To:** "Evelyn Burgess" <eburgess@oakton.edu> ( )
**Cc:** "Anna Shipulina" <ashipuli@oakton.edu> ( )
**Priority:** Normal
**Options:**

From the desks of Helen Grossfeld and Anna
Shipulina:

This is what was said at today's meeting...

*"MEETING" ABOUT JULIE* (handwritten)

Thank you for coming on such short notice. It is important
that we be together so that everyone hears the same information.
During the past several days
there have been numerous
comments and remarks about an employee&#8217;s fitness to work.  This
is a non-issue and employees, both staff and students
are hired lawfully. The appropriate work is done to make sure
individuals are
able to work in their respected areas.  Comments/remarks being
made by staff regarding an employee are
inappropriate and need to stop.  No one is at risk, and you need to
stop worrying about this and focus
on your work.

If you have additional HR related concerns please
contact Mum Martens
in HR. Her extension is 1664.

If calling from off-campus you need to dial (847) 635-1664.
Thank you for
your time.

Move to:  INBOX                    **Move**

*PL. Exhibit "F"* (handwritten)

SquirrelMail

**Current Folder: INBOX**

Previous |

**Subject:** RE: Leave Status
**From:** "Philip Gerner" <pgerner@rsnlt.com>
**Date:** Fri, February 26, 2010 11:31 am
**To:** "Arnie Oudenhoven" <aoudenho@oakton.edu> ( )
**Cc:** "Beth Taylor" <betht@oakton.edu>
**Priority:** Normal
**Options:**

Looks good. Thanks, Arnie.

Philip H. Gerner III
Attorney
Robbins Schwartz Nicholas Lifton & Taylor, Ltd.
55 W. Monroe St., Suite 800
Chicago, Illinois 60603-5144
p: 312.332.7760  f: 312.332.7768

This message is confidential. This message may also be privileged or protected by work product immunity or other laws and regulations. If you have received it by mistake, please re-send this communication to the sender and delete it from your system without copying it or disclosing its contents to anyone.

-----Original Message-----
From: Arnie Oudenhoven [mailto: ]
Sent: Friday, February 26, 2010 11:24 AM
To: Catherine Oyebanjo
Cc: Beth Taylor
Subject: Leave Status

Ms. Oyebanjo,

As of today you have not reported to work nor provided medical documentation to support your request for an FMLA. Ms. Beth Taylor, Benefits Specialist, forwarded you the designation notice and forms on or about February 10, 2010 and asked they be completed as soon as possible. Those forms were sent because the initial FMLA medical certification form you provided was insufficient to support an FMLA leave.

The initial medical documentation submitted did not advise us of your being unable to work due to a personal medical condition. It did not indicate any ongoing medical treatment or any time frame for your subsequent return to work. For an FMLA leave a medical certification

Pl. Exhibit "b"

needs to include symptoms, diagnosis and regimen of continuing treatment. That information is necessary to determine the qualification for an FMLA leave.

I am respectfully requesting that the FMLA medical certification form be completed and submitted by the close of business on Friday March 5, 2010.

If you fail to provide the requested medical certification or it is not satisfactory to support your requested FMLA leave, the College will not be able to grant your FMLA leave request. Failure to qualify for the leave will require you to report to work.

On a related note, you exhausted your accrued sick leave as of Tuesday February 16, 2010. Because you have exhausted sick leave and have not provided us with satisfactory FMLA medical certification, your continued leave of absence as of February 17, 2010 is unauthorized.

Please feel free to contact me if you have any questions.

Sincerely,

D Arnie Oudenhoven
Associate VP for Human Resources

Delete & Prev |

Move to:  INBOX                    **Move**

CHICAGO DISTRICT OFFICE
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
500 WEST MADISON STREET, SUITE 2000
CHICAGO, ILLINOIS 60661

OFFICIAL BUSINESS

7099 3400 0018 8817 9116

60204 0227 8003

BOX

N6
5.5

PL. Exhibits "1" EEOC/IDHR Filings

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 440-2010-02828 |

**Illinois Department Of Human Rights** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Catherine Oyebanjo** | **(773) 262-3832** | **11-03-1962** |

| Street Address | City, State and ZIP Code |
|---|---|
| **P.O. Box 227, Evanston, IL 60204** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **OAKTON COMMUNITY COLLEGE** | **500 or More** | **(847) 635-1600** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1600 E. Golf Road, Des Plaines, IL 60016** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

**DISCRIMINATION BASED ON** *(Check appropriate box(es).)*

☒ RACE  ☒ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

**DATE(S) DISCRIMINATION TOOK PLACE**
Earliest — Latest: **01-07-2010**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment with Respondent on September 2, 2008. My most recent position is Assistant Coordinator. During my employment, I have been subjected to different terms and conditions of employment including but not limited to, death threats. I have complained to Respondent and was subsequently disciplined.

I believe that I have been discriminated and retaliated against because of my race, Black, color, dark-skinned, sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

I believe that I was discriminated against because of my age, 47, (DOB November 3, 1962), in violation of and the Age Discrimination in Employment Act of 1967, as amended.

MAR 0 9 2010

CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Mar 09, 2010** _____ *Date* | Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Catherine Oyebanjo<br>P.O. Box 227<br>Evanston, IL 60204 | From: Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|

Certified Mail 7099 3400 0018 8817 9116 CP

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2010-02828 | Charles E. Kolliker,<br>Investigator | (312) 353-5978 |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____           4-29-2010
John P. Rowe,                        (Date Mailed)
District Director

Enclosures(s)

cc:   **OAKTON COMMUNITY COLLEGE**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 440-2010-02828 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

**Name** *(indicate Mr., Ms., Mrs.)*
**Catherine Oyebanjo**

**Home Phone** *(incl. Area Code)*
**(773) 262-3832**

**Date of Birth**
**11-03-1962**

**Street Address**              City, State and ZIP Code
**P.O. Box 227, Evanston, IL 60204**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

**Name**
**OAKTON COMMUNITY COLLEGE**

**No. Employees, Members**
**500 or More**

**Phone No.** *(Include Area Code)*
**(847) 635-1600**

**Street Address**              City, State and ZIP Code
**1600 E. Golf Road,  Des Plaines, IL 60016**

**Name**

**No. Employees, Members**

**Phone No.** *(Include Area Code)*

**Street Address**              City, State and ZIP Code

**DISCRIMINATION BASED ON** *(Check appropriate box(es).)*

☒ RACE   ☒ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

**DATE(S) DISCRIMINATION TOOK PLACE**
Earliest                        Latest
**01-07-2010**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment with Respondent on September 2, 2008.  My most recent position is Assistant Coordinator.  During my employment, I have been subjected to different terms and conditions of employment including but not limited to, death threats.  I have complained to Respondent and was subsequently disciplined.

I believe that I have been discriminated and retaliated against because of my race, Black, color, dark-skinned, sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

I believe that I was discriminated against because of my age, 47, (DOB November 3, 1962), in violation of and the Age Discrimination in Employment Act of 1967, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Mar 09, 2010**                  *signature*
Date                  Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

2010-04-15 20:05                    >>    847 424 1912                              P 1/1



## ILLINOIS DEPARTMENT OF
# Human Rights

Pat Quinn, Governor
Rocco J. Claps, Director

April 8, 2010

Catherine Oyebanjo
PO Box 227
Evanston, IL 60204

Re:     Catherine Oyebanjo v Oakton Community College
        Control No.: 100407-025

Dear Complainant:

The United States Equal Employment Opportunity Commission (EEOC) and the Illinois Department of Human Rights (Department) are parties to a cooperative agreement. Under this agreement, when you filed your charge of discrimination with the EEOC it was automatically filed with the Department. The Department is keeping a copy of your EEOC charge on file to preserve jurisdiction under Illinois law.

This letter is to inform you that you may proceed with your charge at the Department. **This does not affect the processing of your charge at EEOC.** If you wish to proceed with the Department, you must notify the Department in writing of your decision, either by mail or in person, within 35 days of receipt of this letter.

      By Mail:    Your written decision should be sent via U.S. Postal certified mail, return
                    receipt requested, to: IL Department of Human Rights, Attn: EEOC Referred
                    Charges/Intake Unit, 100 W. Randolph St., Ste. 10-100, Chicago, IL 60601.
      In Person:  You must bring an original and one copy of your written decision. The
                    Department will stamp the copies and one will be returned to you for your
                    records.

You should also provide to the Department (Attn: EEOC Referred Charges/Intake Unit) a copy of the EEOC Determination and Findings as soon as you receive them from the EEOC. When the Department receives your documents, you will be mailed a letter containing additional information about your case.

Your failure to timely notify the Department of your decision will result in the Department closing your file. If you do not wish to proceed with the Department, you do not need to take any further action.

As stated above, this letter does not affect the processing of your charge at the EEOC, and does not apply to any settlement of this charge the parties have made with the EEOC. **If you have any questions regarding this process, please contact Thomas F. Roeser, Pre-Investigations Coordinator, at (312) 814-6295. Please do not contact the EEOC.**

It is not necessary that Respondent take any action at this time.

THE DEPARTMENT OF HUMAN RIGHTS

CC:   **Chief Executive Officer**
      **Oakton Community College**
      **1600 E. Golf Road**
      **Des Plaines, IL 60016**

Rev. 04/10

100 West Randolph Street, James R. Thompson Center, Suite 10-100, Chicago, Illinois 60601, 312-814-6200, 312-263-1579 (TDD)

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2010-04874 |

Illinois Department Of Human Rights and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(incl. Area Code)* | Date of Birth |
|---|---|---|
| **Catherine Oyebanjo** | **(773) 262-3832** | **11-03-1962** |

| Street Address | City, State and ZIP Code |
|---|---|
| **P.O. Box 227, Evanston, IL 60204** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **OAKTON COMMUNITY COLLEGE** | **500 or More** | **(847) 635-1675** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1600 E. Golf Road, Des Plaines, IL 60016** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN<br>☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION<br>☐ OTHER *(Specify)* | Earliest ___  Latest **06-03-2010**<br><br>☐ CONTINUING ACTION |

THE PARTICULARS ARE *(if additional paper is needed, attach extra sheet(s)):*

I was hired by Respondent on or around September 2, 2008. My most recent position was Coordinator. In March, 2010, I filed an EEOC charge of discrimination (number 440-2010-02828). Subsequently, I was discharged.

I believe I was retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED EEOC

JUN 2 4 2010

CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Jun 24, 2010**　　　　　*(signature)*<br>Date　　　　　Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |